Neun v. Blackstone B. & L. Ass'n.

NEUN et al., Appellants, v. BLACKSTONE BUILDING & LOAN
ASSOCIATION et al.

### Division One, March 30, 1899.*

1. **Judgment:** COLLATERAL ATTACK: PERJURED TESTIMONY.   When a court of competent jurisdiction awards judgment dissolving a corporation, appointing a receiver and directing him to wind up its affairs, however erroneous and irregular it may be, and even though it may rest on perjured testimony, it is not subject to be set aside and declared void in a separate suit, unless a fraud was perpetrated on the court in the very act of procuring it.

2. ———: CONTEMPT.   The assets of a corporation which has been dissolved by a decree of court, pass into the custody of the court, whose officer for administering them is the receiver, and no other court has any power to interfere with their management, without permission of the court, which may punish as a contempt any such interference.

3. ———: NECESSARY PARTY.   And in every suit for the recovery of the assets of such corporation, even though they have been fraudulently appropriated by the officers, the receiver is a necessary party.

4. ———: POWER TO SUE.   A receiver of an insolvent corporation can recover its property that has been fraudulently conveyed by a debtor or insolvent, and he may apply to the court for leave to bring such suit, or application may be made by someone having an interest in the company, for an order directing him to sue.

5. ———: FRAUD OF OFFICERS: PROCEEDING.   Where the officers of a corporation in order to cover up their own fraud have by collusion agreed with one of its stockholders to bring suit against the company for the amount due him on his stock, and he does so, and the corporation is at his suit dissolved, and a receiver is appointed, the proper procedure for the other directors and stockholders to take for the recovery of such assets, is not to bring a suit asking that that decree be declared void, and that the management and control of the assets of the company be turned over to them, but to make a proper showing, to the court that appointed the receiver, of the fraudulent transfers of the company's property and of the assets concealed or fraudulently disposed of by by its officers, and to ask the court to direct the receiver to institute proper proceedings to recover them.   Nor can such separate suit to dissolve the decree and to turn over the assets to the other stockholders and directors be maintained, even though they have previously applied to the court to make the receiver a party and their application has been denied.

---

*NOTE.—Decided February 15, 1899.   Rehearing denied March 30, 1899.

Neun v. Blackstone B. & L. Ass'n.

*Appeal from St. Louis City Circuit Court.*—Hon. Selden P. Spencer, Judge.

Affirmed.

M. Kinealy and Kinealy & Kinealy for appellants.

(1) Plaintiffs are entitled to institute this proceeding for the benefit of the Blackstone Building & Loan Association and its stockholders. Slattery v. Transfer Co., 91 Mo. 217; Albers v. Merchants Exchange, 45 Mo. App. 206; R. S. 1889, sec. 2513. (2) It was not necessary to make the receiver a party to this suit. Blair v. Ill. Steel Co., 159 Ill. 359. (3) Judgment should not have been rendered against plaintiffs because of a defect of parties defendant. R. S. 1889, sec. 2099; Butler v. Lawrence, 72 Mo. 227. (4) The beneficiaries can not be concluded by any fraudulent or collusive action of trustees, in the course of a legal proceeding. 3 Thompson on Corps., sec. 3400; Platt v. Jerome, 60 U. S. 384; McClurg v. Wilson, 43 Pa. St. 440; Railroad v. Railroad, 111 U. S. 520; U. S. v. Throgmorton, 98 U. S. 65. (5) The plaintiffs having been denied the privilege of becoming parties to the original suit for the purpose of protecting the interests of the association, may maintain this proceeding. Keppendorf v. Hyde, 110 U. S. 276; Georgia v. Brailsford, 2 U. S. (2 Dal.) 402. (6) The court below had no jurisdiction to declare the corporation dissolved in the suit of Miller v. Blackstone Building & Loan Association. Thompson v. Greeley, 107 Mo. 587; 9 Am. and Eng. Ency. of Law (2 Ed.), 601. (7) Miller was not entitled to any relief in his suit against the Blackstone Building & Loan Association. Maloney v. Real Est. Bldg. & L. A., 57 Mo. App. 384; Cases in Notes, on pp. 301, 302 of 35 L. R. A. (8) It was error to confer the powers of a referee on the receiver. People v. O'Brien, 111 N. Y. 61; State ex rel. v. Johnson, 132 Mo. 105.

KEHR & TITTMANN for respondents.

(1)    A general allegation of fraud is not sufficient.    The facts constituting the fraud should be set out in the petition. Smith v. Sims, 77 Mo. 269; Reed v. Bott, 100 Mo. 62; Hoester v. Sammelmann, 101 Mo. 619; Nichols v. Stevens, 123 Mo. 96.    (2)    Fraud to vitiate a judgment must be fraud committed in the procurement of it, in the very act of obtaining it.    Bates v. Hamilton, 144 Mo. 1; Hamilton v. McLean, 139 Mo. 678. (3) The decree which the petition attacks is an interlocutory decree in a pending cause.    The petition charges that it was rendered without jurisdiction and is null and void. If so, it is no impediment in the way of plaintiffs, and equity will not aid them in removing it.    Railroad v. Reynolds, 89 Mo. 146; Taylor v. Todd, 48 Mo. App. 555; Railroad v. Lowder, 138 Mo. 533.    (4)    The interlocutory decree in Miller v. Siegmund and the building association places all the property and effects of the corporation in the custody of the law.    The court is administering them through its receiver, who is authorized by the decree, and has the right, by virtue of his office, to sue for and recover all assets of the building association.    The right of action for any grievance which the corporation may have, being thus vested in the receiver, the right of plaintiffs to represent the corporation is necessarily excluded.    (5)    The decree being merely interlocutory, it is always under the control of the court rendering it.    The court may, at any time, modify it or set it aside as right or justice may require.    Deickhart v. Rutgers, 45 Mo. 132. Paintiffs therefore have a complete and adequate remedy by a proper application in the suit of Miller v. Siegmund. They have not asked the court to set aside or modify the decree nor have they stated to the court any fact or suggested any reason why the decree should be set aside or modified.    They simply asked the court to be made parties to the suit, which the court properly denied.

MARSHALL, J.—This case comes here by appeal from a final judgment in favor of defendant upon demurrer to the petition. The petition is very voluminous, covering thirty-four printed pages. Boiled down, the facts pleaded are these: The defendant association is a corporation, organized under article IX of chapter 42, R. S. 1889. Walter F. McEntire, its president, and Henry Lindhorn, its secretary, are charged with making an agreement with the Lafayette Bank to lend the money of the bank to borrowers of the association, as if it was the association's money, and with turning over the notes and mortgages to the bank. McEntire and Lindhorn are said to have defaulted in their respective official positions, and to have made loans of the bank's money upon insufficient securities. To cover up their own delinquencies, and to protect the bank, it is charged that they transferred all the good loans to the bank, and the bank was to furnish them money to pay what they owed the association. To accomplish this they filled vacancies in the board of directors of the association by electing clerks of the bank, or others controlled by the bank, to the directory of the association, and after the transfer of the good loans to the bank, the association made an assignment under the statute for the benefit of creditors, to H. O. Siegmund; that to further complicate matters they conspired with Anton Miller, a non-borrowing member, to sue the association and the assignee in an action at law to recover the value of his stock, he having, previous to the assignment, given notice of intention to withdraw, and embracing in the petition an equity feature, asking for the appointment of a receiver; that the association made default, and the assignee answered admitting the assignment and pleading want of information as to the other allegations in the petition; that with the assistance of the attorney of the bank, a consent decree was prepared, and submitted to the court, and entered by the court, which gave Miller judgment

for $962, declared the association insolvent, appointed a receiver, divested the assets out of the assignee and vested them in the receiver, and directed him to wind up the affairs of the association, in the manner usually specified in such decrees, under the direction of the court, and reserved to the court power over the case for the purpose of making such orders as might become necessary; that this decree was improvidently entered because Miller, as a withdrawing stockholder, was only entitled to recover his money if the association had funds available for that purpose, and that having transferred all its good assets to the bank, it had no available funds, and hence the decree was void; that it was further void because it was a part of the scheme between McEntire, Lindhorn and the the bank to cover up the defalcations of the officers of the association, and because it gave the receiver the right to hear and allow claims; that the other directors and stockholders knew nothing of the suit until after the decree was entered, and then they met and appointed the plaintiffs herein to seek redress for the wrong done to the association and its stockholders, and that they caused an application to be made by Neun to the court asking leave to be made a party to the Miller suit, "in order to preserve their" ('the stockholders') "rights and interest in said corporation;" that the court denied the application, and thereupon these plaintiffs caused Nuen to address a letter to each of the directors of the association, stating that he was about to commence a suit, "for the purpose of having the assets of said corporation restored to the possession and control of the directors," either as directors, or if the corporation is dissolved, as trustees, and requested them to become parties to the proposed suit; that the other directors refused to comply with said request; that plaintiffs then applied to the court that had appointed the receiver in the Miller case, saying that they were about to institute a suit against the

association, "for the purpose of recovering and administering the assets" of the association and for a decree ordering the election of a new board of directors, and·that the receiver was a necessary party, because he had the assets, and asking leave to join the receiver as a party defendant; that the court refused to permit its receiver to be made a party to the proposed litigation; that having exhausted all remedies in their power to have a hand in or to control the winding up of the affairs of the association, the plaintiffs bring this suit, and do not make the receiver a party defendant for fear they may be in contempt of court. The prayer of the petition is that Miller, the bank and the assignee be enjoined from taking any further proceeding in the Miller case, or from seeking to obtain from the receiver any property of the association, or from taking any further steps towards enforcing any claims against the association or its property before the receiver, or from seeking any benefit, or taking any action in, under or in furtherance of the decree in the Miller case, but that the said decree be adjudged null and void; that the bank and McEntire and the other defendants who may possess property of the association be ordered to turn it over to the association or its lawful representatives; that an account be taken of the money of the association misappropriated by McEntire and Lindhorn, · and of the property lost to the association by the conspiracy between the association, McEntire, Lindhorn, the bank and Miller, and that they be decreed to pay such losses.

The assignee and the bank demurred jointly on three grounds:

1.   That plaintiffs have no legal capacity to sue; 2, that there is no equity in the bill; 3, that the receiver is a necessary· party. The court sustained the demurrer, the plaintiffs refused to plead further, there was a final judgment on demurrer, for defendants, and plaintiffs appealed to this court.

## I.

If all that is charged in the petition be conceded, it is still evident that plaintiffs have misconceived their remedy. When the court acted upon the Miller case, awarded him judgment, dissolved the corporation, appointed a receiver and directed him to wind up the affairs of the association, it became a judgment of a court of competent jurisdiction, and however erroneous or irregular it may have been, or however much it may have even rested upon perjured testimony, it is not subject to attack in this manner. There was no fraud perpetrated on the court in the very act of procuring the judgment, and hence can not be set aside or annulled in this proceeding. [Hamilton v. McLean, 139 Mo. 678; Bates v. Hamilton, 144 Mo. 1.]

## II.

The assets of the association passed, under the decree in the Miller case, into the custody of the court, whose officer the receiver is for administering them, and no other court has any power to interfere with them, without the permission of that court. [Beach on Receivers (Alderson's Ed.), secs. 229-230-235-238-239-240; Kerr on Receivers (2 Ed.), p. 196 et seq.] The court would not tolerate interference with its management, through its receiver, of the affairs of the association, and would, in a proper judicial spirit, punish as a contempt any such conduct.

If the officers of the association are indebted to it for misappropriation of its funds, or if the bank has improperly received the association assets belonging to it, the receiver is the proper party to bring suit against them and recover them. Formerly it was held, that it was not proper for the receiver to apply to the court appointing him for leave to bring such suits, and that he must wait until the application was made to such court by someone having an interest in the

association for an order directing the receiver to sue, accompanying the application, of course, with a proper showing to the court, but the later rule in America is that it may be done in either way.   [High on Receivers (3 Ed.), sec. 181; Kerr on Receivers (2 Ed.), pp. 222-224, and cases cited in note.] Unlike an assignee, who is created by the act of the debtor, a receiver can recover property that has been fraudulently conveyed by the debtor or insolvent.   [Talmage v. Pell, 3 Selden 328; Porter v. Williams, 5 Selden 142; Wilson v. Allen, 6 Barb. 542; Osgood v. Laytin, 3 Abb. App. Dec. 418; Bank v. Burr, 24 Me. 256; Ruggles v. Brock, 6 Hun. 164; Lathrop v. Knapp, 27 Wis. 215; Butterworth v. O'Brien, 24 How. Pr. Rep. 438.]

The remedy was open to plaintiffs to make a proper showing, to the court that appointed the receiver, of the fraudulent transfers and concealed assets and rights of the association, and to ask the court to direct the receiver to institute proper proceedings to recover them.   The application of these plaintiffs to be made parties defendant in the Miller suit was properly refused, for these questions could not have been inquired into in that proceeding.   Plaintiff's application to sue the receiver was properly refused, for there was no showing made that the receiver had done anything wrong or that he knew of the frauds here charged and had failed in his duty, and for the further essentially vital reason that the proper way to remedy those wrongs was to inform the court of them in the Miller case, which was still pending and in which no final judgment had been entered, and to ask the court to direct the receiver to sue.   The application, as made, did not comply with these requirements, but simply informed the court that these plaintiffs were about to institute a suit "for the purpose of recovering and administering the assets of" the association, "and for a decree of the court ordering a new election of directors thereof," and that the

receiver was a necessary party.   In other words, the plaintiffs
told the court that they were about to institute a suit to
recover the assets that were in the custody of the court, for
the purpose of administering them themselves instead of hav-
ing the court administer them.   The blunt terms employed in
the application were dangerously near the border line of
contempt of court, and the plaintiffs are fortunate that the
only result was a denial of their application.   That applica-
tion was totally unlike an application to a court for leave to
sue a receiver on his bond for his misconduct, which courts
sometimes permit to be done, instead of taking immediate
cognizance of it themselves.   [Kerr on Receivers (2 Ed.), p.
231 et seq., and cases cited in note 1.]

Plaintiffs' contention that when the court refused their
application for leave to sue the receiver for the purposes
herein pointed out, it authorized them to bring this suit with-
out joining the receiver, is wholly untenable.   It is a contra-
diction of terms to say that a suit can be maintained without
joining a necessary party, because the court, whose officer is
the necessary party, will not permit him to be sued.   If the
court erred in so refusing, the plaintiffs had an adequate
remedy to correct the error of the court, but that remedy
is not to try to maintain an action when the party absolutely
necessary to its complete determination, is not made a party
to the suit.   Especially is it erroneous to proceed, as plain-
tiffs have done in this case, to circumvent, interfere with and
hamper the court and its receiver by proceeding against the
parties to the suit in which the receiver was appointed for
the purpose of tying their hands so that they shall not receive
the fruits of their litigation, by enjoining them from prosecut-
ing that suit, or from obtaining any allowances on their claims
by the receiver, or from receiving payment out of or enforcing
their claims against the assets in the hands of the receiver,
and which, in due time, they will become entitled to under
the order of distribution in the case in which the receiver

was appointed. The cases relied on by plaintiffs do not warrant or sanction such a proceeding. For instance: in Slattery v. Transportation Co., 91 Mo. 217, the assets of the corporation were *in custodia legis,* and BLACK, J., delivering the opinion of the court, after quoting, with approval, the language of Mr. Justice MILLER, in Samuel v. Holladay, Woolworth 418, that no case or dictum can be found holding that an individual stockholder can sue for a debt or damages to the corporation, because the corporation fails or refuses to do so, said: "If the matters stated in the petition are true, the plaintiffs have a complete remedy under sections 948-9 Revised Statutes, and when a receiver is appointed that officer will stand invested with authority to sue for all demands and debts due to the company." And accordingly the right of the individual stockholder to sue, because the corporation refused to do so, was denied, notwithstanding the court held that the corporation had a good cause of action. This case was followed in Albers v. Merchants' Exchange, 45 Mo. App. l. c. 219, and the right denied to the individual stockholder. The case of Blair v. Illinois Steel Co., 159 Ill. 350, is too long to be minutely analyzed here, but it is enough to say that it was a contest of priorities and preferences and the property was not in the hands of a receiver when the bill was filed—it had been in the hands of receivers appointed by the United States Court, but that case was dismissed on the same day the bill was filed. The questions here involved were not in issue and were not decided in that case, and it is therefore no authority for plaintiff's contention here. In McClurg v. Wilson, 43 Pa. St. 440, the property was not in the hands of a receiver. It was a suit to set aside a fraudulent satisfaction of judgment. Hence is not applicable here. Krippendorf v. Hyde, 110 U. S. 276, grew out of an attachment suit, wherein the defendant gave a forthcoming bond and kept the property. Krippendorf intervened but was dismissed without prejudice to his right to enforce his claim in some

other form.    Accordingly he filed a bill in equity making all the parties to the attachment suit and also the marshal, parties defendant, and claimed a superior right in equity to any of them.    It is plain that this case does not touch the case at bar.    The case of State of Georgia v. Brailsford, 2 Dallas 402, presented this issue: after the war for independence the State of Georgia passed a confiscation act forfeiting the property and claims of all British subjects to the State of Georgia. A citizen of Georgia owed a British subject a debt, and the Englishman sued the Georgian, in an action at law to recover it.    The State of Georgia asked leave to intervene in the suit and was refused.    The State then applied to the Supreme Court of the United States for an injunction against the Englishman and the Georgian, alleging a conspiracy between them to defraud the State, and asking that they be enjoined, and that the marshal be ordered to turn over the money in his hands, collected on execution, to the State.    The Supreme Court of the United States by a divided court (the report shows the court stood three to three) granted the injunction.

This case is interesting but not applicable to the question under consideration here.    The *res* was not *in custodia legis;* there was no receiver; it was simply an assertion in a court of equity of a superior right to the *res* over the rights of the parties litigant in the suit at law.

In short no authority has been called to our attention supporting plaintiff's contention.    On the contrary all precedents are against it, and the proper and harmonious administration of the law requires that when a court has taken possession of property for the purpose of administering upon it, through a receiver, no interference, directly or indirectly, will be tolerated, but the rights of all parties must be adjusted in that suit and when that court refuses to permit a suit to be brought against its receiver, the result sought to be attained by such suit, can not be accomplished by circumvention in

the manner attempted by this proceeding.    The judgment of the circuit court is right and is affirmed.

All concur except VALLIANT, J., not sitting, having while on the circuit bench, heard the Miller case.