ALLEN TRAIL v. WILLIAM SOMERVILLE; ARBA N.
CRANE, Appellant.

St. Louis Court of Appeals, May 13, 1886.

1. APPEALS—REFEREES.—A referee can not appeal from an order upon
him to file his report in a matter referred to him by the trial court.

2. ———— COMPENSATION—LIEN.—*Semble*, that a referee has no power
to withhold his report until his fee has been paid.

APPEAL from the St. Louis Circuit Court, SHEPARD
BARCLAY, Judge.

*Appeal dismissed.*

BOYLE, ADAMS & McKEIGHAN, and GEORGE M. STEW-
ART, for the appellant: Referees have a lien upon their
reports and may refuse to file them, and may hold them

until their fees are paid by the parties. *Geib v. Topping*, 83 N. Y. 46; *Little v. Lynch*, 1 How. Pr. 95; *Ott v. Schroeppel*, 3 Barb. 57–63; Hoffman Ref. 77.

HENRY HITCHCOCK, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This cause was referred to a referee, who heard the parties, prepared his report, and submitted to the court the question of the amount of compensation to be allowed him, which the court fixed at the sum of $1,500, a part of which was paid. The referee took the position that he was entitled to withhold his report, and not file it in court until the remainder of his compensation was paid. Thereupon, on motion of the defendant, the court, under the authority conferred by section 3616, Revised Statutes, made an order upon the referee to file his report, from which order the referee has prosecuted this appeal to this court. In view of the importance of the question of practice involved, all the parties, the plaintiff, the defendant, and the referee, have appeared before us by their counsel, and united in requesting our decision upon it. We have grave doubt about the propriety of expressing any opinion upon the question, because we are of the opinion that this is not a case in which an appeal lies. If we are correct in this opinion—and we shall speak upon this point further on — our decision upon the question of practice involved in the appeal would be extra-judicial and not binding as authority upon any of the circuit courts; and, as a general rule, it is unseemly, and, in some cases, indecent, for courts to express opinions upon questions not before them for decision. But in view of the fact that all of the parties have united in requesting our opinion upon the question of practice involved, and have stated to us that the circuit judges have taken different views of it, and that much confusion exists in practice in consequence of this contrariety of opinion, we have concluded to state what our impressions

are, after such attention as we have been able to give the question, and then to dispose of the case, as we must, in view of our opinion, that it is one in which an appeal does not lie.

The question is, whether in this state a referee has the power to withhold his report-as a security for the payment of his compensation. We are of opinion that he has not. An examination of the statutes relating to referees (Rev. Stat., sects. 3605, 3626), shows that he is, for the purposes of the particular case, and within the scope of the order of reference, a judicial officer of the court clothed with large powers. By section 3626, Revised Statutes, he shall, in the absence of any special agreement, receive such compensation for his services as the court, in which the case is pending, may allow, not exceeding ten dollars per day. The statute does not in terms say that such allowance shall be taxed as costs, but the inference is irresistible that it is to be so taxed, and such has always been the practice, in the absence of special stipulations to the contrary. By section 986, Revised Statutes, "if, at any time after the commencement of any suit by a resident of this state, he shall become non-resident, or in any case the court shall be satisfied that any plaintiff is unable to pay the costs of suit, or that he is so unsettled as to endanger the officers of the court with respect to their legal demands, the court shall, on motion of the defendant, or any officer of the court, rule the plaintiff on or before the day in such rule named, to give security for the payment of the costs in such suit," and if the plaintiff fails to give security, the court may dismiss the suit. We are of opinion that a referee is an officer of the court within the meaning of this last statute, and that he may, in case the payment of his compensation is endangered, as therein provided, procure a rule on the plaintiff to give security for the costs, which will protect him in the payment of his compensation, whatever the ultimate termination of the suit may be. It is forcibly argued on behalf of the appellant that this.

statute ought not to be held to apply to referees, because it would be unseemly for a judicial officer of a court, who must decide a pending controversy between the parties, to bring himself into a state of antagonism with the plaintiff, by moving against him for a rule to give security for the costs. The answer to this is that it is entirely a matter of choice with a member of the bar, to whom a cause is referred, whether he will accept the office of referee or not. He is not, like the permanent officers of the court, obliged to perform certain prescribed duties for whomsoever shall call upon him to perform them ; but he may accept the office or decline it, and he may subsequently accept it upon terms. He may, before accepting it, require that the plaintiff shall give security for the costs, or require that the parties shall, by stipulation, or otherwise, properly secure the payment of his compensation.

It seems to have been the practice in the English courts of common law to allow an arbitrator to refuse the publication of his award until his charges are paid. *Musselbrook v. Dunkin,* 9 Bing. 605 ; *McArthur v. Campbell,* 5 Barn. & Ad. 518. The supreme court of New York in 1848, citing these and other English decisions to the same effect, held that this was the law. *Ott v. Schroeppel,* 3 Barb. 56, 62. Decisions of the supreme court of New York have extended this rule to referees, and, as late as the year 1880, it was stated in the court of appeals of that state by Rapallo, J., *arguendo,* that a referee undoubtedly is not bound to part with his report without the payment of his legal fees. *Geib v. Topping,* 83 N. Y. 46. It was so held in *Little v. Lynch* (1 How. Pr. N. S. 95), decided by the supreme court of New York in 1885. It is also to be observed that the statute of New York provides in express terms for the taxation of the compensation of referees as costs. 3 Rev. Stat., N. Y. 1875, 533.

But the practice touching the payment of costs in legal proceedings in this state seems to have departed very

materially from the practice of the English courts of common law; and different principles prevail in this state touching the subject of costs from those which prevail in New York. By the ancient practice in England writs were *purchased*, and each party seems at every step in a proceeding to have paid the fees of the officers of the court for their services, as fast as such services were rendered. Indeed, the idea of requiring the plaintiff to give security for costs seems to have been to indemnify the defendant against the costs to which he might be put by the litigation in case it should turn out to be unfounded. Accordingly, the language of such a rule frequently was that the plaintiff be required to give security for the defendant's costs. *Roberts v. Roberts*, 6 Dowl. P. C. 556; *Anon*, 1 Wils. 130. It does not seem to have been a part of the idea requiring security for costs, that the plaintiff should be required to give security for his own costs, since he was obliged to pay the ministerial officers of the court for their services, step by step, as the cause proceeded. Hence, when the cause had finally progressed to a judgment, so much of the judgment as related to costs recited that the plaintiff (or the defendant) recover *his* costs, the theory being that each party had paid his own costs as they accrued, and that the successful party was entitled to recover from the other party such costs as he had paid. Our entries of judgments preserve the same ancient form, although the costs are in fact collected for the benefit of the officers of the court in whose favor they are taxed, and are never paid to the successful party, except in exceptional cases where he may have paid them, and may be entitled to recover them. As litigation seems to have been thus conducted in the English courts upon what may be termed a *cash basis*, instead of upon a credit basis, as with us, no statute exists in that country, so far as we know, similar to our statute (Rev. Stat., sect. 986), allowing the ministerial officers of the court to move against the plaintiff in a pending suit for security for their fees. Such being the

important difference between the English practice as to costs and our practice, the decision of the English courts, upholding the practice of arbitrators in refusing to publish their awards until their charges should be paid, would seem to have no application to the case of referees under our system. The learned counsel for the appellant, in citing to us the New York decisions already referred to, have pointed out that, under the New York statute, the fees of referees are taxable as costs in the case; and such undoubtedly is the rule, though not expressed in terms under our statute. But they have not shown us that there is in New York such a statute as section 986 of our Revised Statutes, allowing the officers of the court to protect themselves by moving against the plaintiff for security for their fees. We have not been able to discover the existence of such a statute in New York, and the absence of it marks a very important distinction, applicable to the question before us, between the law of costs in that state and in this. Another very important distinction was adverted to in the opinion of this court, recently delivered in the case of *Roberts v. Nelson (ante, p.* 30), namely, that in New York an attorney has a lien upon the judgment of his client for his fees, whereas, no such lien is allowed in this state.

Upon the whole, we are of opinion that a referee in this state is in no better position in respect of his costs than any other officer of the court. He is entitled to the same remedies which are accorded to them, and has the further advantage over them of being able to protect himself, by declining the reference, or by requiring the parties, as a condition of his entering upon the discharge of its duties, to secure the payment of his compensation. The rule which is here invoked, although not so stated in the printed arguments submitted to us, amounts, really to this, that a referee ought to have an artizan's lien upon what he produces to secure the payment of his labor in producing it. If a referee ought to have such a lien, we see no reason why a sheriff or clerk ought not to

have the same lien. But if a clerk should withhold a writ or refuse to draft the entry of a judgment, or if a sheriff should refuse to execute a writ or to serve a subpœna, until his fee should be paid, such conduct would be justly regarded as illegal and oppressive. The duties discharged by a referee are analogous to those discharged by a jury; but what would be thought if a jury in a court of record, should come into court with a sealed verdict and announce to the court that they were ready to deliver it whenever the parties paid to the jurors their per diem?

It seems unnecessary to prolong this argument. The system of paying costs in advance, or step by step, to the officers of the court, has never obtained in this state as in England, but in lieu of this the statute has conferred upon such officers the power to require security for their costs, as already pointed out. They may have this security; but, nevertheless, except where interlocutory orders awarding costs are made, they must, as a general rule, wait for their payment until the final determination of the suit. It results from these views, that we are of opinion that the circuit court was right in ruling the referee to file his report before the payment of his compensation, which had been fixed by the court.

But we are equally of opinion that an order of a court made upon a referee, under section 3616, Revised Statutes, requiring him to file his report, is not an order from which an appeal lies. If a referee may appeal from such an order it would follow from analogy that the clerk or the sheriff might appeal from any rule made by the court in the progress of a cause, requiring of him the performance of an official duty. It is conceded that many orders made by a court upon its officers, upon motion or otherwise, may be in the nature of a final judgment disposing of a substantial right, from which an appeal will lie. And if the contention of the referee in this case is correct, that he is not, in the strict sense, an officer of the court, but that his right to his compensation is a matter resting in contract merely, there is much

color for the idea that an order of the court requiring him to file his report without the payment of fee, thereby destroying and discharging his lien for his fee, which he supposes to exist, is a final order as against him, disposing of a substantial right, such as gives him a right of appeal. But, as we hold that he has no such lien, the order of the court deprives him of no remedy for the recovery of his fee which he possessed, and, therefore, there can be no colorable ground for upholding his right of appeal. The clerk might as well be allowed an appeal from an order of the court requiring him to issue a subpoena for a witness, and the same reasoning would give an appeal to the sheriff from an order requiring him to return a subpoena or any other interlocutory precept or process.

It results from these views that the only proper disposition which we can make of this appeal is to dismiss it. It is so ordered. All the judges concur.