AETNA INSURANCE COMPANY, a Corporation, ET AL., Plaintiffs, v. R. E. O'MALLEY, Substituted for JOSEPH B. THOMPSON, who was in turn substituted for BEN C. HYDE, Superintendent of the Insurance Department of the State, Appellant, H. P. LAUF, L. H. COOK and GILBERT LAMB, Commissioners and Custodians and their counsel.—118 S. W. (2d) 3.

Court en Banc, June 17, 1938.*

---
*NOTE: Opinion filed at September Term, 1937, April 21, 1938; motion for rehearing filed; motion overruled at May Term, 1938, June 17, 1938.

*Roy McKittrick,* Attorney General, *Drake Watson* and *Harry G. Waltner, Jr.,* Assistant Attorneys General, for appellant; *J. F. Allebach* and *Julian O'Malley* of counsel.

*H. P. Lauf, L. H. Cook* and *Gilbert Lamb, per se.*

*Robert J. Folonie, E. R. Morrison, Ragland, Otto & Potter, Igoe, Carroll & Keefe* and *Homer H. Berger* for plaintiffs.

FRANK, J.—These appeals involve the validity of allowances of fees to Messrs. L. H. Cook, H. P. Lauf and Gilbert Lamb, made by the Circuit Court of Cole County out of a certain insurance fund in the registry of said court. The allowances to Cook and Lauf were for services as commissioners and custodians of said fund. The allowance to Mr. Lamb was for services as attorney for said commissioners and custodians.

The pertinent facts are, in substance, as follows:

On October 9, 1922, the Superintendent of Insurance ordered a ten per cent reduction in insurance rates, effective November 15, 1922. On November 10, 1922, the insurance companies filed in the circuit court an action for review of said reduction order. On said day the circuit court, pursuant to a stipulation of the parties, entered an order authorizing the companies, pending the review to collect the rates in force prior to said order, and to refund the excess collected to the policyholders in event the order reducing rates was finally sustained. On December 22, 1924, the court entered judgment setting aside the ten per cent reduction order, and the superintendent appealed. On June 23, 1926, this court reversed the judgment. Our mandate was lodged in the circuit court directing that defendant (superintendent) "be restored to all things which he lost by reason of said erroneous judgment." [Aetna Ins. Co. v. Hyde, 315 Mo. 113, 285 S. W. 651.] After the reduction order was sustained the companies made certain refunds of excess premiums collected to the policyholders. Thereafter, the superintendent, contending that the companies had not made complete refunds, filed in the circuit court a motion to compel the insurance companies to pay into court, with interest, the excess premiums still in their possession. The insurance companies filed answers in which they challenged, for numerous alleged reasons, the jurisdiction of the circuit court to entertain the motion. They also denied having excess premiums and alleged compliance with a stipulation of the parties and order of the court that, pending the review of the reduction order, the rate in force prior to said order should be collected by the companies but refunded by them to the policyholders, if said order was sustained on final judgment. Thus the question of restitution was at issue on the pleadings.

Thereafter, orders and judgments were entered in the circuit court as follows:

Upon hearing of the superintendent's motion for restitution, the court on May 26, 1933, rendered an interlocutory judgment for an accounting and restitution by the companies. The circuit court found that the companies had collected excess premiums in a certain total

sum for which, with interest, judgment was entered against them. The judgment provided for the appointment of masters to hear the companies on their claim of refunds already made to policyholders, for which they would receive credit. It also provided that when the companies fully complied with the judgment and other orders of the court, they would be discharged from all liability for restitution.

On May 27, 1933, the court appointed four masters, including Messrs. Lauf and Cook, to conduct the hearings and report to the court. It ordered the companies to deposit a certain sum for payment of costs.

In prohibition in this court (State ex rel. Abeille Ins. Co. v. Sevier, 335 Mo. 269, 73 S. W. (2d) 361), the companies contended that the circuit court was without jurisdiction to entertain the motion for restitution. We overruled the contention but ruled that said court was without authority to require the deposit for payment of costs, and that it could appoint not to exceed three referees. [Secs. 975, 976, 977, R. S. 1929.]

In due course our mandate in the prohibition case was lodged in the circuit court. Thereafter, and on December 14, 1934, said court ordered each company to file with the clerk, not later than February 15, 1935, a certified account of the amount of excess premiums collected and the amount of said premiums already refunded to policyholders. The order also directed each company to deliver to the clerk a check payable to custodians, hereinafter named, for the amount of unrefunded excess premiums.

It appointed Messrs. L. H. Cook and H. P. Lauf commissioners and custodians to receive the checks and examine said accounts. It authorized the Superintendent of Insurance to file exceptions to said accounts, ordered hearings before the commissioners and custodians on said exceptions and directed them to report to the court their findings with reference to the same. It ordered that if an additional sum was found due from a company, said sum should be paid to the clerk, to be delivered to the custodians. It further ordered that upon final settlement by a company, the custodians should report to the court that said company had complied with its orders and was entitled to be discharged.

On December 14, 1934, the court directed the bank to carry the account in the name of Messrs. Lauf and Cook and permit no withdrawals except on checks signed by the judge and the custodians. It also directed Messrs. Lauf and Cook to keep books with reference to the fund.

On January 11, 1935, the court authorized Messrs. Lauf and Cook to conduct hearings, pass on claims filed against the fund and report their findings to the court.

On February 11, 1935, the court ordered Messrs. Lauf and Cook

to expend all money and consume all reasonable time necessary to locate policyholders entitled to refunds and pay the same. It also directed them to investigate all the reports filed by the companies. It authorized them to sue and be sued, to conduct hearings on reasonable notice to the companies, and otherwise make investigations. It empowered them to subpoena witnesses, cause the production of evidence and directed them to file in court a certified copy of said evidence with their findings. It also directed them to file in court reports with reference to money refunded by the companies and money paid to policyholders. It authorized them to incur indebtedness for furniture, desks, equipment, material, supplies and office rent, and to pay therefor from the total refund moneys paid by the companies and report to the court with reference to said expense. In said order the court announced that it would appoint all counsel, employees and other persons necessary to assist Messrs. Lauf and Cook in the discharge of their duties and fix the compensation of said employees.

On February 16, 1935, the court appointed Mr. Gilbert Lamb attorney for "L. H. Cook, Esquire, and H. P. Lauf, Esquire."

On February 16, 1935, the court fixed the compensation of said attorney at $420 a month.

On May 24, 1935, the court increased the salary of said attorney to $600 a month.

On December 2, 1935, Messrs. Lauf and Cook filed a report with reference to the amount of restitution due from each of the companies.

On December 7, 1935, the court entered final judgment in restitution against the companies for about $2,729,000.

On December 7, 1934, the court taxed certain costs against the companies. On January 16, 1936, Messrs. Lauf and Cook filed a final report of the accounting of the insurance companies.

On February 11, 1936, the report of Messrs. Lauf and Cook was filed, which showed that $4202.58 had been disbursed to the policyholders to date, and showed "accumulated operating expenses" in the sum of $50,220.24.

On February 18, 1936, the court discharged the companies and sureties "of all further liability of every kind and character arising from the restitution proceeding, and affirming and approving the accounts of Messrs. Cook, Lauf and Lamb." Thereupon, it ordered Messrs. Lauf and Cook to pay from the restitution fund excess premiums to policyholders entitled to the same.

On March 3, 1936, the court allowed Messrs. Lauf and Cook each additional compensation in the sum of $40,000, and allowed Mr. Lamb additional compensation in the sum of $20,000. It also allowed Messrs. Lauf and Cook each the sum of $500 per month, beginning January 1, 1936, and Mr. Lamb $500 per month, beginning March 1, 1936.

I. The Superintendent of Insurance admits that the circuit court had jurisdiction to entertain the motion for restitution. We so ruled in State ex rel. Abeille Ins. Co. v. Sevier, 335 Mo. 269, 73 S. W. (2d) 361. He also admits that said court had jurisdiction to appoint referees for the accounting on the part of the companies. However, he contends that the trial court was without jurisdiction to distribute the insurance fund to the policyholders. In support of said contention he cites Section 5874, Revised Statutes 1929, the pertinent part of which follows:

"During the pendency of such action or review, the orders and directions of the Superintendent of Insurance, as to reduction of rates, shall be suspended, but all such insurance companies *shall,* during the pendency of such action or review, deposit with the Superintendent of Insurance on all policies issued or renewed after the date of such order or direction, and until the final determination of such action, an amount equal to the difference between the rates fixed by the Superintendent in his order and those in effect prior thereto, such funds to be held by the Superintendent of Insurance to await the result of such review, *and in the event the orders and directions of the Superintendent be set aside, such funds shall be returned to the companies pro rata, and in the event his orders and directions shall be sustained, then such funds shall be turned over to the policyholders pro rata.*" (Italics ours.)

This statute designates the Superintendent of Insurance as custodian of excess premiums collected pending an action to review an order reducing insurance rates, with authority to refund the excess so collected to the policyholders after final judgment in the review action sustaining the reduction order.

Respondents contend that the statute, by its terms, applies only to suits to review an order reducing rates, and since the review suit had gone to final judgment without depositing the excess premiums collected with the Superintendent of Insurance, it was too late after final judgment in the review action to complain of errors, if any, in the procedure leading up to that judgment.

This contention overlooks the fact that the statute enjoins two duties upon the Superintendent of Insurance, one to be performed by him before final judgment in the review action, the other after final judgment in that action. Before final judgment it was his duty to receive and hold all excess premiums collected pending the action. After final judgment sustaining the order reducing rates it was then his duty, under the statute, to deliver the excess premiums to the policyholders from whom they had been collected. The fact that the statute had been violated pending the review action by failing to deliver the excess premiums collected to the Superintendent of Insurance, did not authorize the court to further violate the statute after

final judgment in the review action, by ordering the fund delivered to custodians of its own choosing for distribution, instead of to the Superintendent of Insurance, the statutory custodian thereof.

Respondents contend, however, that since Section 5874 was not in effect at the time the review action was brought, and since, at that time, there was no other statute making the Superintendent of Insurance custodian of the excess premiums collected pending the review action, the superintendent had a lawful right to and did stipulate and agree with the companies that they might collect the old rate pending the review action, keep the excess collected in their possession until the final outcome of that action, and in event the reduction order was sustained, refund the excess so collected to the policyholders.

It is true that Section 5874 was not in effect when the review action was brought. The review action was brought on November 10, 1922. The effective date of Section 5874 was June 25, 1923. Although Section 5874 was not in effect when the review action was brought, its applicability to that action depends upon whether or not it is a procedural statute. If it deals with procedure only, it was applicable to and should have governed the case from its effective date, June 25, 1923. The rule governing the applicability of procedural statutes under such circumstances is stated by this court in Clark v. Railroad, 219 Mo. 524, 534, 118 S. W. 40, 43, as follows:

"No person can claim a vested right in any particular mode of procedure for the enforcement or defense of his rights. Where a statute deals with procedure only, prima facie it applies to all actions—those which have accrued or are pending, and future actions. What was before a subject of equitable relief may be made triable by jury without affecting vested rights. If, before final decision, a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings."

The substantive rights to be determined in the review action was the legality of the order reducing rates, which determination necessarily fixed the ownership of the excess premiums collected pending the review action. If the order reducing rates was sustained the excess belonged to the policyholders from whom it had been collected. If the reduction order was set aside the excess collected belonged to the insurance companies. A statute designating who should hold the excess premiums pending the litigation, and who should deliver such excess to the proper parties after the litigation was over, relates solely to the procedure to be followed for the protection and enforcement of the rights of the successful parties in the litigation, and had nothing whatever to do with the determination of such rights. For the reasons stated, we hold that the provision of Section 5874 designating the Superintendent of Insurance as custodian of the excess premiums

collected pending the review action, with authority to refund such excess to the parties entitled thereto under the final judgment in that action, relates to procedure only and should have governed the case from June 25, 1923, its effective date.

█ Our conclusion that Section 5874 applied to the review action from its effective date, brings us to the question of the effect of the stipulation entered into between the superintendent and the companies prior to the effective date of the statute. This stipulation was before us in Abeille Fire Insurance Co. v. Sevier, 335 Mo. 269, 73 S. W. (2d) 361. We there held the stipulation as well as the court order approving it was void because contrary to statute. Assuming, for the sake of argument, that the stipulation was valid, it purported to give no one except the companies themselves the right to make refunds to the policyholders in event the order reducing rates was sustained. They forfeited that alleged right by failing and refusing to turn over the fund in question to the policyholders or anyone else. Thereafter the Superintendent of Insurance filed a motion in the circuit court in the review action to compel the companies to pay into court, with interest, the amount of unrefunded excess premiums still in their possession. █ On final hearing of this motion, the circuit court on December 7, 1935, rendered final judgment in restitution against the companies for approximately $2,729,000 and ordered that said sum be paid to Messrs. Cook and Lauf as custodians of the court. The companies did not appeal. They complied with this judgment by paying the money into the registry of the court, and accepting their final discharge. They are not here contending that they or anyone else have a right to make the refunds in question because of the stipulation. In this situation, the stipulaiton, whether valid or invalid, has nothing whatever to do with the case. We must, therefore, treat the case as though the stipulation had not been made. Disregarding the stipulation, as we must do, it logically follows that the refunds must be made in accordance with the applicable statutes governing that question.

The refunds could not be made until the court on December 7, 1935, by its final judgment in the restitution action compelled the companies to pay the excess premiums into court. At that time the statute, Section 5874, designating the Superintendent of Insurance as the custodian to make the refunds to policyholders was in force and effect and had been since June 25, 1923. This statute, being procedural only, governed the case from its effective date. [Clark v. Railroad, supra.] It must, therefore, logically follow that the court had no authority to assume jurisdiction of the fund or appoint custodians of its own choosing to make refunds to policyholders, in the face of a positive and unambiguous statute which designates the Superintendent of Insurance as custodian of the fund with directions to

make such refunds. Our conclusion is supported by authority. The statute in question was construed by this court in the recent case of State ex inf. McKittrick v. American Colony Insurance Company, 336 Mo. 406, 427, 80 S. W. (2d) 876, we there said:

"'As a matter of fact, the section does not deal with judicial impoundment at all. It says that during the pendency of a review proceeding the orders of the superintendent as to reduction of rates shall be suspended, and that the insurance companies shall deposit with the Superintendent of Insurance on all policies issued or renewed after the date of the reduction order, and until the final determination of the review proceeding, the amount of the reduction, the fund so created to be held by the superintendent awaiting the decision of the controversy. In other words, the section calls for the suspension of a rate reduction order and the collection and impoundment of the disputed portion of the rate *always and automatically,* wholly independent of the courts. The money is deposited with the superintendent and handled and disbursed by him as the statute specifies without any court order whatever."

Under the plain terms of the statute, as interpreted by this court in the case last above cited, the fund in question should have been handled by the companies and the superintendent, wholly independent of the circuit court and without any court order whatever. That is, it was the statutory duty of the companies to deposit the excess with the superintendent as they collected it. It was the statutory duty of the superintendent to hold such excess until the litigation ended, then turn same over to the parties entitled thereto under the final judgment of the court in the review action. When the companies failed to perform their statutory duty, the circuit court had jurisdiction to compel them to do so by adjudging that they pay the excess premiums still in their possession to the Superintendent of Insurance, or into court for him, but it did not have authority to seize the fund and attempt to administer it through custodians of its own choosing in violation of the statute which provides, in plain terms, that the Superintendent of Insurance shall administer it.

It will not do to say that because the court had jurisdiction of the subject matter of restitution and of the parties, any order made or judgment rendered in that action, if wrong, was merely erroneous, but not void for want of jurisdiction. Although a court has jurisdiction of the subject matter of an action and of the parties, it cannot exceed that jurisdiction. It must have authority to render the particular judgment in the particular case. Speaking to that question in Gray v. Clement, 286 Mo. 100, 109, 227 S. W. 111, we said:

"Where the record of a judgment shows on its face that the court did not have authority to grant the particular relief which it did grant, the judgment is void and subject to collateral attack. There

must be jurisdiction of the matter acted upon; the court must have the power 'to render the particular judgment in the particular case' before it can be said to have jurisdiction.''

On a second appeal of Gray v. Clement, supra, 296 Mo. 497, 511, 246 S. W. 940, we said:

''While it is well settled that a judgment cannot be questioned collaterally for an error committed in the exercise of jurisdiction, the rule is equally well established that a judgment may be attacked in a collateral proceeding for error in assuming jurisdiction. Even where a court has jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void. Thus, a judgment may be collaterally attacked where the court had jurisdiction of the parties and subject-matter of the action, but did not have jurisdiction of the question which the judgment assumed to determine, or power to grant the particular relief which it assumes to afford to the litigants.''

For all of the reasons stated, the order of the trial court appointing Messrs. Cook and Lauf as custodians to distribute said fund to the policyholders, being in violation of Section 5874, was in excess of the court's jurisdiction and void. If so, the order of said court appointing Mr. Gilbert Lamb as attorney for said alleged custodians was likewise in excess of the court's jurisdiction and therefore void. Since the appointment of Messrs. Cook and Lauf as custodians, and Mr. Lamb as their attorney was void, it follows that the orders made allowing them compensation as such were likewise void. [St. Louis etc., Railroad Co. v. Wear, 135 Mo. 230, 268, 36 S. W. 357, 358.]

It is contended, however, that the Superintendent of Insurance is estopped to object to the appointment of Messrs. Cook and Lauf to make the refunds in question, (1) because in the motion for restitution he prayed that the amount found to be due the policyholders be paid into the registry of the court, and (2) that he, knowing that Messrs. Cook and Lauf had been appointed as custodian of the funds with authority to deliver same to the policyholders stood by for a period of two years, and, without objection, permitted them to handle the funds as such custodians.

These contentions cannot be sustained for two reasons, (1) the fact that the Superintendent of Insurance asked in his motion for restitution that the amount found to be due the policyholders be paid into the registry of the court, did not amount to consent or agreement that the court might thereafter handle such funds in any manner other than that provided by statute, and (2) since the court did not have jurisdiction to appoint custodians to make refunds to policyholders, such jurisdiction could not be conferred by silence, acquiescence, estoppel or agreement.

 Further contention is made that since the restitution proceeding was an equitable action, the court had inherent power, independent of the statute, to appoint commissioners and custodians and counsel for them.

Courts of equity have no more authority to disregard plain provisions of a statute than do courts of law. Equity follows the law. The rule in this regard is well stated in 10 Ruling Case Law, page 382, as follows:

"Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute equally with courts of law. . . . So wherever the rights or the situation of the parties are clearly defined and established by law, whether it be common or statutory, equity has no power to change or unsettle those rights or that situation. . . ."

Since authority to administer the fund was by statute lodged with the Superintendent of Insurance, the circuit court, sitting as a court of equity, had no authority to disregard the plain provisions of the statute and assume administration of the fund. In none of the cases cited by respondents on this point was there a statute which prevented the court from assuming jurisdiction of the disputed question, as there is in this case. For that reason the cases cited are not in point.

 The next question is whether or not Messrs. Cook and Lauf are entitled to compensation as referees. We held in Abeille Fire Insurance Co. v. Sevier, 335 Mo. 269, 73 S. W. (2d) 361, that the restitution proceeding was the character of case which authorized the court to direct a reference. The order of the court appointing Messrs. Cook and Lauf, by whatever name they were called, constituted them referees with authority to hold hearings for the purpose of determining the amount due from the companies, and to report their findings to the court. Such was the extent of their authority. The orders of the court which attempted to clothe them with authority to administer the fund after it was paid into court were void for reasons heretofore stated. They were entitled to compensation for services performed as referees, taxable as costs of litigation.

There is a distinction between cost of administration and costs of litigation. Litigation costs are taxed against the losing party. In Pullis v. Pullis Bros. Iron Co., 90 Mo. App. 244, 250, that court said:

"A distinction is drawn between costs of administration and of litigation, by which the latter must be taxed against the losing party, but the former need not in all circumstances."

In Schawaker v. McLaughlin, 139 Mo. 333, 342, 40 S. W. 935, this court said:

"It is next contended that the allowance by the circuit court of compensation to the referee is not properly taxable as costs. The

statute declares that referees, in the absence of any special agreement, 'shall receive such compensation for their services as the court in which the case is pending may allow, not exceeding ten dollars per day.' [R. S. 1889, sec. 2158.]

"This language does not literally say that the compensation of referees shall be taxed as costs. But the court (authorized to make the allowance) is not provided by law with any official funds of its own for such expenses. It is hence but a fair and natural inference that the law intends the allowance to be taxed as costs. [Trail v. Somerville (1886), 22 Mo. App. 308.]"

See, also, Van Trump v. Sameman, 193 Mo. App. 617, 618, 187 S. W. 124.

Keeping in mind the difference between costs of litigation and costs of administration, it is clear that whatever compensation Messrs. Cook and Lauf were entitled to for their services as referees was costs of litigation and not costs of administration. Such compensation being costs of litigation, it should have been taxed as costs against the losing party at the judgment term. The rule governing the taxation of litigation costs is stated by this court as follows:

"Where the costs are definite and fixed by statute, the clerk in the first instance is by law required to tax costs of the case, which of course is purely a ministerial duty, and, when the court is requested to review the clerk's action in that regard, it is exercising a similar duty, simply correcting errors made by the clerk in trying to obey the statutes; but not so in regard to the taxation of costs, which requires judicial investigation and determination. In such a case, the clerk has no authority whatever to act, except as ordered by the court; in that case the court alone can order the costs taxed or retaxed, which must be done upon judicial investigation and determination, and must be done during the term of the court at which the final judgment in the cause is rendered, for it is elementary that with the lapse of the term at which the final judgment is rendered the jurisdiction of the court over the cause ceases." [Burton v. Railroad Co., 275 Mo. 185, 195, 204 S. W. 501, 504; State ex rel. Williams v. Daues, 334 Mo. 91, 66 S. W. (2d) 137; Niedringhaus v. Wm. Niedringhaus Investment Co., 54 S. W. (2d) 79.]

No order was made at the judgment term or at any other term fixing the compensation to which Messrs. Cook and Lauf were entitled for their services as referees, and taxing same as costs against the losing parties. Concerning the claim of Mr. Lamb for compensation as attorney for Messrs. Cook and Lauf, we know of no law, and none has been cited, which would authorize the court to appoint an attorney to advise and assist Messrs. Cook and Lauf in the performance of their duties as mere referees, which was their only lawful capacity. But if the court had authority to appoint such an attorney, his compen-

sation for assisting referees in the performance of their duties as such, would be costs of litigation which should have been taxed as costs against the losing party at the judgment term, and that was not done.

We have been asked to dismiss the appeal herein. The first ground of the motion to dismiss is that the Superintendent of Insurance has no appealable interest.

Our judgment is the superintendent had an appealable interest. Section 5874 of the Insurance Code enjoined upon him the duty of preserving excess premiums collected pending the action to review the reduction order, and disbursing such excess to the policyholders after the reduction order was sustained. When the circuit court by its judgment prevented the superintendent from performing his statutory duty, it was not only his right but his duty to test the efficacy of that judgment on appeal. Speaking of the Insurance Code in State ex rel. Missouri State Life Insurance Co. v. Hall, Judge et al., 330 Mo. 1107, 52 S. W. (2d) 174, 177, this court said:

"The original Code and amendments thereto indicate an intention to regulate the business from beginning to end, thereby protecting individual and public interests. The enactment of this comprehensive Code made the State a real party in interest. The Superintendent of Insurance is the administrative officer in charge of that interest, and courts are without authority to interfere with his administration of the Code."

The second and third grounds of the motion ask that the appeals be dismissed because of alleged insufficiency of appellant's abstract of record and statement of facts.

Cause No. 35231 is an appeal from the order of March 3, 1936, allowing to Messrs. Cook, Lauf and Lamb the fees here in controversy. We refer to the facts heretofore stated and discussed in this opinion without restating them. They all appear in appellant's abstract of record and statement of facts. We regard them as sufficient to a proper understanding of the case and, therefore, decline to dismiss the appeal.

Cause No. 35233 is an appeal from the order of February 18, 1936, finding that the companies had fully complied with the final judgment in restitution and adjudging that they and their sureties be finally discharged. It is not contended that the companies did not fully comply with the judgment as rendered. The contention appears to be that whatever compensation Messrs. Cook, Lauf and Lamb were entitled to should have been assessed against the companies as litigation costs, and the court erred in discharging the companies and their sureties without first assessing such costs against them.

The court had jurisdiction to render final judgment against the

companies in the restitution proceeding, and to assess all litigation costs against them. The failure to tax the costs in question against the losing parties at the judgment term was an error in the exercise of jurisdiction which could have been corrected by the trial court at the judgment term, or thereafter by direction of this court on appeal, if an appeal had been duly and timely taken. But since the trial court did not correct the error at the judgment term, and since no appeal was taken, the judgment taxing costs became final with the lapse of the judgment term, and divested the court of jurisdiction to thereafter correct the alleged error. After the judgment became final the companies complied therewith by paying the amount thereof in full into the registry of the court. Whereupon the court entered the order of February 18, 1936, finding that the judgment was paid in full and adjudging that the companies and their sureties be discharged from further liability. The payment of the judgment, and not the order thereafter entered by the court, was the thing that discharged the companies from further liability. The order was merely record evidence of such payment and discharge. On the record as presented appellant was aggrieved, if at all, by the erroneous taxation of costs at the judgment term, from which no appeal was taken, and not by the order evidencing payment of the judgment and discharge of the companies, from which no appeal could be taken. It results that the appeal in case No. 35233 should be and is hereby dismissed.

Cause 35232 is an appeal from the order overruling the motion to vacate and set aside the order and judgment appealed from in cause 35231. Cause 35234 is an appeal from the order overruling the motion to vacate and set aside the order and judgment appealed from in cause 35233.

It is well settled that no appeal lies from an order overruling a motion to vacate or set aside a judgment or order. The appeal must be from the judgment in question and not from the order overruling the motion to set aside the judgment. For the reasons stated, the appeals in causes 35232, and 35234 should be and are hereby dismissed.

The dismissal of the appeals in causes 35232, 35233 and 35234 leaves only cause 35231 to be determined on its merits.

As heretofore stated, cause 35231 is the appeal from the order of March 3, 1936, allowing Messrs. Cook and Lauf additional compensation, as commissioners and custodians, in the sum of $40,000 each, and fixing their monthly allowance at the sum of $500 each, beginning January 1, 1936. The order also allowed Mr. Gilbert Lamb additional compensation, as attorney for said commissioners and custodians, in the sum of $20,000 and fixed his monthly compensation at the sum of $500, beginning March 1, 1936.

The order allowing such compensation and directing that it be paid out of the fund cannot be sustained. In the first place, Messrs. Cook

and Lauf are not entitled to any compensation as custodians to distribute the fund for the reason that the order appointing them as such custodians was in excess of the court's jurisdiction and void because violative of Section 5874 of the Insurance Code. In the second place, whatever compensation Messrs. Cook and Lauf were entitled to as referees was litigation costs and for that reason it should have been taxed against the losing parties and paid by them. If the court had no jurisdiction to appoint Messrs. Cook and Lauf as custodians, the conclusion follows that it had no jurisdiction to appoint Mr. Lamb as attorney to represent them as custodians. If Mr. Lamb was entitled to any compensation for advising and assisting Messrs. Cook and Lauf as referees, such compensation, if any, was litigation cost and should have been determined and taxed against the losing parties at the judgment term which was not done. There is no authority for paying any of the compensation in question out of the fund.

For all of the reasons stated, the order of March 3, 1936, allowing compensation to Messrs. Cook, Lauf and Lamb and directing the payment of same out of the fund in the hands of said alleged custodians should be reversed. It is so ordered. *Hays, C. J., Gantt* and *Douglas, JJ.,* concur. *Tipton, J.,* dissents in separate opinion in which *Ellison* and *Leedy, JJ.,* concur.

TIPTON, J. (dissenting).—I am unable to concur in that part of of the majority opinion which holds the final judgment of December 7, 1935, subject to collateral attack, and also that part of the opinion holding that the trial court had the power to appoint Messrs. Lauf and Cook only as referees and not as commissioners and custodians. I, therefore, deem it expedient to express my views thereon.

Appellant's main reasons why the order allowing the fees to respondents should be set aside are as follows: (1) the order appointing respondents Lauf and Cook is illegal and void because Section 5874, Revised Statutes 1929, designates appellant as custodian of any fund created by virtue of a rate reduction order, and respondents Lauf and Cook, as referees or custodians and commissioners, are controlled by the reference statutes, and by Section 996, Revised Statutes 1929, which limits their compensation to ten dollars per day; (2) any compensation allowed respondents should have been taxed as costs against the insurance companies and not against the fund; and (3) appellant's motion to quash the notice of the hearing for the purpose of allowing these fees should have been sustained.

In regard to appellant's first assignment, the record shows that on December 14, 1934, the trial court made an order appointing respondents Lauf and Cook as custodians and commissioners, and, among other duties imposed upon them by this order, was the duty to receive and safely keep the moneys due from the insurance com-

panies. From time to time the court made additional orders enlarging their duties. On December 7, 1935, the court entered a final judgment in the restitution proceeding which directed the balance of the unrefunded premiums to be turned over to respondents Lauf and Cook. There was no appeal from that judgment, nor does this appeal involve directly the question of propriety of the appointments; that is, there was no appeal from the appointments, nor was there any motion to vacate the appointments involved in this appeal. The appointments are only collaterally attacked.

Section 5874, supra, among other things, provides that in a suit to review the action of the Superintendent of Insurance in ordering a rate reduction, the court shall have authority to sustain, set aside or modify such orders, and during the pendency of the action, such orders shall be suspended, and the insurance companies shall deposit with the Superintendent of Insurance ''an amount equal to the difference between the rates fixed by the superintendent in his order and those in effect prior thereto, such funds to be held by the Superintendent of Insurance to await the result of such review, and in the event the orders and directions of the superintendent be set aside, such funds shall be returned to the companies *pro rata,* and in event his orders and directions shall be sustained, then such funds shall be turned over to the policyholders *pro rata.*''

Appellant's contention on this point is stated in his brief as follows: ''By virtue of the statute the power of the trial court was limited in determining the issues between the insurance companies (plaintiffs) and the Superintendent of Insurance, to ascertain the amount the companies had unlawfully collected from the policyholders which had not been refunded. The judgment of December 7, 1935, definitely fixed the amount due from the insurance companies, the judgment debtors. After having determined the amount due, the court had no power to divest the Superintendent of Insurance of custody and control of the funds; that is, the court's jurisdiction of the fund was limited to causing to be restored to the Superinendent the fund paid into court by the insurance companies.''

In the original rate reduction case, Aetna Insurance Company et al. v. Hyde, 315 Mo. 113, 285 S. W. 65, we held it to be an equity proceeding. The restitution proceeding is likewise an equity proceeding and governed by the rules of equity. [Atlantic Coast Lines v. Florida, 295 U. S. 301.]

I agree with the majority opinion that Section 5874, supra, does apply to this proceeding. I also agree that the Superintendent of Insurance is not estopped to claim the custody of this fund, because he is a public official and represents the policyholders by virtue of his office, and his duties are defined by statute; he cannot waive them as they are for the protection of the public.

During the rate reduction litigation, the insurance companies collected the rate in effect prior to the rate reduction order, and probably did so because of the stipulation entered into between them and the then insurance superintendent. The object of the restitution proceeding was to obtain this sum for the benefit of the policyholders, and in this action it was necessary for the court to order this sum paid over to someone for their benefit. I am of the opinion that the court should have turned this sum over to the Superintendent of Insurance.

This brings me to the question of whether the orders and judgment of the court ordering the moneys turned over to respondents is void or mere error. If void, the orders and judgment directing the moneys to be turned over to respondents Lauf and Cook are subject to collateral attack. On the other hand, if the orders and judgment are erroneous, then they can be set aside only on direct attack, which was not done in this case. As previously stated, there was no appeal from any of these orders or from the final judgment. The question is: Did the trial court have jurisdiction to enter these orders, and judgment? If not, they are subject to collateral attack.

"Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in a given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the point decided must be, in substance and effect, within the issue." [Stark v. Kirchgraber, 186 Mo. 633, l. c. 645, 85 S. W. 868; Gray v. Clements, 286 Mo. 100, l. c. 107, 227 S. W. 111, l. c. 113.]

Tested by these rules, the trial court had cognizance of restitution proceedings. There is no doubt that the court had the parties present, nor that the court had a right to order the excess premiums turned over to someone. The Superintendent of Insurance contends that the court should have ordered these sums turned over to him, relying upon Sections 5874, supra, while respondents Lauf and Cook contend the court had power to order the sums turned over to them. If the court, in making its decision as to in whose hands the money should be placed, misconstrued Section 5874, supra, then it is mere error. The court may have come to the conclusion that that section applied only to rate reduction actions before the judgment became final. That is the contention of respondents in their brief. This section is susceptible of that construction because it says, "during the pendency of the action." The rate reduction action was terminated when this motion was fined. I think it is mere error. It is true equity follows the law, but if a court of equity misconstrues a statute in entering a final judgment, that does not make the judg-

ment void; to hold otherwise we would have to rule that every time a trial court misconstrued a statute, its judgment would be void. Certainly, that is not the law.

In the case of Rivard v. Mo. Pac. Railroad Co., 257 Mo. 135, l. c. 168, 165 S. W. 763, we said:

"A court is possessed of jurisdiction when is is permitted by the policy of the law to hear and determine cases of the same nature as the one with respect to which the complaint is made, and where it has jurisdiction of the persons of the parties to the suit. The judgment of the trial court lacking either of these essentials is open to any form of attack. *It follows that the judgment of a court of general jurisdiction with the parties before it, and with the power, to grant or refuse relief in the case presented, though contrary to law as expressed in the decisions of the Supreme Court or the terms of a statute, is at most only an erroneous exercise of jurisdiction and as such is impregnable to an assault in a collateral proceedings."* (Italics ours.)

 I believe the majority opinion correctly holds Section 5874, supra, to be a procedural statute. The failure of the trial court to follow a procedural statute is an irregularity only and does not render the order void, merely voidable. [Smith v. Black, 231 Mo. 681, 132 S. W. 1129, Schneiderheinze v. Berg, 269 Mo. 263, 190 S. W. 593.]

I believe that the court had power to require the fund to be paid over to respondents Lauf and Cook, even though in so doing it erred and, therefore, its orders and judgment are not open to collateral attack.

I do not think the case of Gray v. Clements, supra, cited by the majority opinion, is in point. In that case plaintiff was a life tenant and defendants owned the remainder. Plaintiff's petition alleged these facts and the judgment also recited them. We held that the court had jurisdiction of the parties, and had jurisdiction of partition suits, but that the judgment showed on its face that the relief granted was such as the court could not render in that class of cases. Therefore, the court did not have power to grant or refuse relief in the case presented, making the judgment subject to collateral attack. Clearly, that case is not in point, because in the case at bar the court did have jurisdiction of the parties and the subject matter; it did have the right to require the fund to be turned over to someone and if it designated respondents Lauf and Cook instead of the Superintendent of Insurance it was mere error.

 I think there is another reason why the orders and judgment appointing respondents Lauf and Cook as custodians and commissioners are not subject to collateral attack; their duties as custodians and commissioners are very similar to those of a receiver, and also those of a referee. This point will be discussed later.

In the case of Neun v. Blackstone B. & L. Assn., 149 Mo. 74, l. c. 80, 50 S. W. 436, we said:

"If all that is charged in the petition be conceded, it is still evident that plaintiffs have misconceived their remedy. When the court acted upon the Miller case, awarded him judgment, dissolved the corporation, appointed a receiver and directed him to wind up the affairs of the association, it became a judgment of a court of competent jurisdiction, and however erroneous or irregular it may have been, or however much it may have even rested upon perjured testimony, it is not subject to attack in this manner. There was no fraud perpetrated on the court in the very act of procuring the judgment, and hence cannot be set aside or annulled in this proceeding."

In the case of Block v. Estes, 92 Mo. 318, l. c. 324, 4 S. W. 731, we said:

"Generally, the regularity of the appointment of a receiver cannot be questioned in collateral proceedings, but the remedy, in that behalf, is by motion to vacate the order."

In the case of Greeley v. The Provident Sav. Bank, 103 Mo. 212, l. c. 222, 15 S. W. 429, we said:

"But it is urged that the circuit court had *no power* to appoint a receiver. This objection, also, is without merit, even technically speaking, and is readily answered.

"It is a collateral attack on a valid judgment, to-wit, the appointment of the receiver, a judgment from which an appeal could have been taken and the matter righted, or the matter could have been reached and vacated by motion."

[See, also, the following cases: Cox v. Volkert, 86 Mo. 505; Thompson v. Greeley, 107 Mo. 577, 17 S. W. 962; State ex rel. Klotz v. Ross, 118 Mo. 23, 23 S. W. 196; State ex rel. Connors v. Shelton, 238 Mo. 281, 142 S. W. 417; Keokuk Northern Line Packet Co. v. Davidson, 13 Mo. App. 561.]

In the case at bar, appellant did not file a motion to vacate respondents' appointments, nor did he appeal from such orders. I think that under these circumstances their appointments are not open to collateral attack. As the trial court had custody of the funds, it had inherent power to protect those funds; in fact, it was its duty to do so, even though it came into possession of the funds by erroneous orders and judgment. I also think the court had power to protect the funds so long as they were in its custody, even though its orders obtaining them were void.

In the case of State ex rel. North British & Mercantile Ins. Co., Ltd., v. Thompson, 330 Mo. 1146, l. c. 1155, 52 S. W. (2d) 472, l. c. 476, we said:

"The fund has been accumulated without authority of law. Pol-

icyholders could not be forced to pay rates 16 2/3 per cent above the approved rate. The relator, having defied the restrictions of the rating statute, now seeks its protection for the fruits of that violation.

"Nevertheless the companies have put in effect and have collected those rates as increased. The circuit court has authorized the payment of the differences between those rates and the former rates to the superintendent of insurance. He has received and is still receiving the accumulation of those excess rates and he has that fund in his custody. *The trial court has inherent power to protect that fund.* It is not bound by the provision of Section 5874 which applies only to a decrease of rates. *The court may provide for the protection of the fund in any way which to the court seems feasible for the purpose.*" (Italics ours.)

Again in the case of the American Constitution Fire Assurance Company et al. v. R. E. O'Malley, Superintendent of the Insurance Department of the State of Missouri, 342 Mo. 139, 113 S. W. (2d) 795, the author of that opinion, who is also the writer of the majority opinion in the case at bar, said:

"Although the impounded fund was accumulated without authority of law, and in a case of which the court did not have jurisdiction, yet, since the court has the fund in its custody, it is its duty to protect it. . . ."

I am not undertaking to decide if the Superintendent of Insurance can get possession of the funds in question by some appropriate proceeding; that question is not before us. I do think, however, that so long as the court has the funds in its possession, it has the inherent power as a court of equity to protect those funds for the benefit of the rightful owners, and provide for the protection of the funds in any way which, to the court, seems feasible to accomplish that end.

For the purpose of ascertaining the amount due from each of the insurance companies, and for the purpose of protecting that amount and distributing it to the various policyholders, the court appointed respondents Lauf and Cook, with the title of custodians and commissioners.

The Superintendent of Insurance contends that regardless of the title the court gave them, it could appoint them only as referees. To sustain his position, he relies upon our case of State ex rel. Abeille Fire Ins. Co. v. Sevier, 335 Mo. 269, 73 S. W. (2d) 361. "The statutes provide that the court may direct a reference in certain specified cases, and may appoint one or more referees, not exceeding three. The case in question falls within the class of cases specified in the statute in which the court would be authorized to direct a reference and appoint the required number of referees, not exceeding three.

[Secs. 975, 976 and 977, R. S. 1929.] There is, however, no authority for appointing four referees. . . ."

On May 27, 1933, after the interlocutory judgment of restitution, the court appointed four masters to conduct hearings and report their findings to the court. The only thing we decided in that case was that, under the statutes, the court did not have power to appoint four masters or referees, and that the maximum number it could appoint was three. No other question was discussed in that opinion, and we did not rule in that case that only referees could be appointed.

It is to be noted that the sections of our statutes in regard to referees is no part of the Insurance Code, so it cannot be said that it was exclusively the only thing the court could do. Therefore, I think that the court could protect the funds for the benefit of the policyholders in any way it deemed feasible for that purpose. To determine whether respondents Lauf and Cook are referees, masters, or custodians and commissioners, we look to the orders and directions of the court to see their duties.

The court charged respondents Lauf and Cook with the duty of examining accounts and reports filed by the insurance companies for the purpose of determining whether such reports conformed to the requirements of the order and were true and correct accounting and to determine any objections that might be filed to the accounts and reports. They were authorized upon their own authority and independent of objections and exceptions to ascertain and determine whether or not the reports and accounts were true and correct and report their findings and conclusions of law. They were further authorized to receive the sums of money from the various insurance companies and deposit same in a bank or banks, to pass upon all claims filed against the funds, to hear testimony in that behalf, and to make any and all allowances against the funds. The orders provided the procedure to be followed by them in locating the policyholders who were entitled to refunds, and gave them power to pass on such claims and pay the amounts thereunder when established to be just and due. It also gave them power to sue and be sued.

A custodian has been defined as, "A manager of property under the direction of a court during the pendency of an action, for the benefit of whomsoever is ultimately found to be entitled to the property; one whose duty it is to watch, guard and account for that which is committed to his custody; an officer of the court." [17 C. J. 439.]

A commission is defined as, "An authority or writ issuing from a court, in relation to a cause before it, directing and authorizing a person or persons named to do some act or exercise some special function." [12 C. J. 144.]

"A referee is thus defined in 24 Am. & Eng. Ency. Law (2 Ed.), page 219:

" 'A referee is a person to whom a cause pending in court is referred by the court, to take testimony, hear the parties, and report thereon to the court, and upon whose report, if confirmed, judgment is entered.'

"Another authority, 34 Cyc. 774, thus defines 'reference' and 'referee:'

" 'A reference is a sending of a pending cause or some question therein by the court in which it is pending to a private person to hear and determine the cause or some question therein or to take evidence and report the same, with or without his opinion thereon, to the court. Before there can be a reference there must be an action pending, and generally only matters connected with the pending suit can be referred. The person to whom the reference is made is usually termed a referee; but various other names are given to such persons in different jurisdictions, there sometimes being, however, a difference between a referee and such other person. The terms auditor, commissioner, arbitrator, examiner, assessor, etc., are often used. A referee is to be distinguished from a master who is appointed only in equity suits pursuant to the old equity practice, although in some jurisdictions a referee in an equity suit appointed pursuant to statute is termed a referee rather than a master. In so far as such officers perform the duties of a referee, the difference in title may be disregarded and the title of referee is therefore used generically throughout this article except where there is a difference of importance between the particular officer and a referee.' " [State ex rel. Wright v. McQuillin, 252 Mo. 334, l. c. 338, 158 S. W. 652.]

Sections 975, 976 and 977, Revised Statutes 1929, deal with what may be referred and who may be appointed referees. These sections show that the statutory duties are very similar to those stated in the above quotation.

"*Our statutes with regard to references and referees are but additions to the old chancery ideas of masters in chancery. The statutes merely broaden the common-law field for references. For this reason the statutes are not full and complete, but much is left to be gathered from the old chancery rules as to references in chancery.*" [State ex rel. Wright v. McQuillin, supra, 252 Mo. l. c. 341, 158 S. W. 652.] (Italics ours.)

Thus, we see the duties imposed upon respondents Lauf and Cook are more than those duties of a mere referee. They come within the definition of a commissioner and also that of a custodian, and are similar to the duties of both a referee and a receiver.

Section 998, Revised Statutes 1929, defines the duties of a receiver.

That section provides that, "The court, or any judge thereof in vacation, shall have power to appoint a receiver, whenever such appointment shall be deemed necessary, whose duty it shall be to keep and preserve any money or other thing deposited in court, or that may be subject of a tender, and to keep and preserve all property and protect any business or business interest entrusted to him pending any legal or equitable proceeding concerning the same, subject to the order of the court."

In speaking of a receiver the author, in 53 Corpus Juris, 17, says:

"A general receiver is one appointed by a court of chancery by virtue of its inherent power, independent of any statute, and the ordinary chancery receiver is a ministerial officer appointed by the court to take possession of and preserve the fund or property in litigation."

The duties imposed upon respondents by the court correspond closely to both those of a referee and a receiver, and I am of the opinion that the trial court in an equity case had authority to appoint respondents as custodians and commissioners to assist the court in ascertaining the amounts due from the various insurance companies, and also to aid the court in preserving these funds and in seeing that the policyholders received their *pro rata* share of the excess premiums collected by the insurance companies.

I think that the court had the authority to appoint respondent Lamb as attorney and counsel for the custodians and commissioners.

The expenses in determining the amounts that the insurance companies owed the various policyholders are litigation costs, and should have been taxed as such, but the cost of preserving the funds and paying to each policyholder the amount due him after the funds were paid into court are administration expenses, and become a trust fund in the hands of the court. This is an equity proceeding, and the equity doctrine is "that a trust fund of right should bear the expenses of its own administration." [Johnson v. United Railways Co. of St. Louis, 347 Mo. 326, 1. c. 350, 152 S. W. 362.]

I think that the trial court, sitting as an equity chancellor, had a right to pay respondents a reasonable fee out of the funds in the court's custody for their work in preserving the funds and in paying each policyholder the amount due him.

The Superintendent of Insurance contends that the trial court erred in overruling his motion to quash the notice of the hearing on the allowance of fees to respondents.

On February 7, 1936, the clerk of the circuit court wrote the Superintendent of Insurance that "the court will on March 2nd, 1936, at 9:00 o'clock A. M., take up the matter of allowing fees to Commissioners and Custodians and their counsel. . . ." On February 29, 1936, respondents filed their application for allowance of fees,

and on March 2, 1936, the Superintendent of Insurance, by special appearance, filed a motion to quash the notice of the hearing for the fee allowance. The court continued the hearing on the motion to quash until the next day and then overruled it. On that date it made the allowance to respondents.

It is to be remembered that the final judgment was entered December 7, 1935, during the October Term, and the allowance was made at a subsequent term to which the final judgment was entered, to-wit: the February Term. "A party over whom a court has obtained jurisdiction must take notice of all proceedings until final judgment is rendered, but, after judgment, he is not regarded as being before the court, and should have notice of any subsequent proceedings which affect his rights." [Roberts v. St. Louis Merchants' Land Improvement Co., 126 Mo. 460, 29 S. W. 584.]

Section 758, Revised Statutes 1929, provides that notices shall be in writing. Section 760, Revised Statutes 1929, provides that absent a court rule otherwise, notice shall be given at least five days before the hearing, and Section 761, Revised Statutes 1929, provides that a notice may be served by any sheriff, marshal or constable, or by any person who would be a competent witness. Section 1273, Revised Statutes 1929, states how a notice shall be served, and directs that a notice shall be served by "the delivery of a true copy of such notice to the person intended to be notified, or leaving of such copy at his usual place of abode, with some member of his family over the age of fifteen years."

The question presented is: Was the letter of the circuit clerk to the Superintendent of Insurance on February 7, 1936, a substantial compliance with the statutes? I think not.

"A statute directing the manner of serving a notice must be strictly complied with, especially where the notice affects property rights." [46 C. J. 557, sec. 64.]

It is probably true that the letter was mailed, and that it was received by the Superintendent of Insurance, but, "A notice as good as, or equivalent to, the one required by the statute will not do. The very notice which the law prescribes must be given." [City of St. Louis v. Bell Place Realty Co., 259 Mo. 126, 1. c. 138, 168 S. W. 721.]

After appellant's motion to quash the notice was overruled, he took no part in the hearing of the application for allowance of fees. He, therefore, did not waive the giving of the notice. To hold that the letter was sufficient notice in view of the command of the statutes would violate the due process clause of our Constitution. As a matter of law, I think the latter constituted no notice whatsoever, and the court erred in overruling appellant's motion to quash.

For the above reasons, I think the order of the circuit court in allowing the fees should be reversed and remanded.

*Leedy* and *Ellison, JJ.,* concur.