STATE OF MISSOURI at the Relation of MISSOURI STATE LIFE INSURANCE COMPANY, a Corporation, Relator, v. ROBERT W. HALL, Judge of Division No. 3 of the Circuit Court of the City of St. Louis, JOSEPH B. THOMPSON and MONTAGUE LYON.—52 S. W. (2d) 174.

Court en Banc, August 5, 1932.

1108

*Williams & Nelson, Otto & Potter, Allen May* and *Jourdan & English* for relator.

1110

*Stratton Shartel*, Attorney-General, for respondent; *G. C. Weatherby* of counsel.

GANTT, J.—Original proceeding in prohibition. Relator seeks to prohibit respondent judge of the Circuit Court of the City of St. Louis from enforcing an order appointing receivers for the Missouri State Life Insurance Company and to prohibit said receivers from taking charge of the assets of said company.

The order was entered in Duggan v. Missouri State Life Insurance Company et al., commenced in said court on December 14, 1931. In that case plaintiff alleged that relator was a Missouri corporation engaged in issuing policies of insurance for profit; that the eight individual defendants with four others were directors of the company; that the by-laws provided for thirteen directors but that one director died and a successor had not been elected; that he (plaintiff), a stockholder, was suing for himself and relator and all other stockholders who desired to join in the suit.

He further alleged in substance that said directors had been guilty of mismanagement and fraudulent conduct as officers of relator; that the twelve directors were divided into groups, numbering six; that each was attempting to obtain control of the business and they were engaged in a factional fight to obtain proxies from other stockholders; that said directors had made no effort to recover funds and assets lost as a result of said mismanagement and fraudulent conduct and that it would be useless to request them to do so; that they jointly controlled a majority of the stock of said corporation; that the other stockholders are scattered throughout the country, and for that reason an action could not be instituted at the direction of a majority of the stockholders.

He further alleged that about 1928 he purchased shares of stock of relator at $80 per share; that the mismanagement and fraudulent conduct of said directors caused said stock to decline on the market to $9 per share, and that said directors should be removed because of said mismanagement and fraudulent conduct and new directors elected under supervision of the court. He further alleged that in his opinion relator was solvent, and that its policyholders were in no danger of loss, but that further losses and possible serious impairment should be avoided by prompt removal of said directors. He further alleged that he had no adequate remedy at law.

1112

Wherefore, he prayed for removal of said directors and an election to fill the vacancies, and that no director so removed be eligible to hold office in the company; that the court decree that said directors account for their official conduct in the management and possession of the funds, property and business of the company, and that the court decree payment by them to relator of sums of money and the value of property of relator transferred by them to others or lost by their mismanagement and fraudulent conduct, and that the court make such further orders, judgments and decrees touching the premises as to the court may seem just and proper.

On January 29, 1932, nonresident defendants. filed a petition and bond for removal to the Federal Court. The petition for removal was denied on March 28, 1932. In the meantime plaintiff Duggan, owner of five shares of stock, of the par value of $10 and the market value of $9, became alarmed "at the way things were going," and, after denial of the petition for removal and on said date, amended his petition by omitting the allegation that suit was brought for the benefit of relator, and by adding to the petition four paragraphs. In those paragraphs it was alleged, on information and belief, that the published statements of relator disclosed a gradual depreciation in its assets and reserves for policyholders; that said statements did not reflect the actual and market values of many of the holdings of relator; that said values were in fact substantially less than the values contained in said public statements; that the confidence of the public in relator was rapidly waning, with the result that unless a court of equity either temporarily or permanently laid hold of relator and its assets and business, relator would become insolvent and the value of the shares of its capital stock would become worthless; that said directors, although requested, failed to seek redress for losses already sustained by reason of mismanagement and fraudulent conduct.

It was further alleged, on information and belief, that the Superintendent of the Insurance Department had been for a long time and was then fully informed of the acts of mismanagement on the part of said directors but that said Superintendent had failed and neglected to proceed under the law to remedy such mismanagement or to cause relator to be managed by a competent board of directors or to cause said directors to repay or cause to be repaid to relator money lost by reason of the mismanagement and fraudulent conduct of said directors.

It was further alleged, on information and belief, that continuation of the business of relator under the conditions hereinabove set forth would be unfair, unjust and inequitable to the interests of policyholders and shareholders of relator in that such continued course of conduct and management would result not only to the detriment, injury and prejudice of policyholders but irreparable loss and damage to plaintiff and other stockholders.

He also amended the prayer to the petition by asking that receivers be appointed for the purpose of continuing the business of relator or of determining whether same may or should be continued, and by asking for an injunction restraining defendants and all persons from interfering with property or assets in possession of receivers pending the determination of the suit. After amending the petition, plaintiff Duggan became more alarmed, and on March 29, 1932, moved for the appointment of receivers. The motion follows:

"Now comes the plaintiff and shows to the court that there is urgent necessity for the immediate appointment of a receiver or receivers of the defendant, Missouri State Life Insurance Company, as prayed in his amended petition filed herein, for the following reasons, to-wit:

"That the defendant corporation has been for some time past, and is now, without an active managing head; that by reason of grave doubt, as disclosed by recent examinations into the business and affairs of the defendant corporation, concerning and touching the solvency of the defendant corporation and the advisability of its continuance in the business of soliciting and issuing new insurance, and concerning and touching the security of the policyholders in the defendant corporation, and of the shareholders therein; that the assets and properties of the defendant corporation are in serious danger of being wasted and dissipated, to the irreparable loss and damage to said policyholders, as well as to the holders of the shares of capital stock of the defendant corporation; and that unless the appointment of such receiver or receivers is immediately made, the plaintiff and the stockholders of the defendant corporation, as well as the said policyholders, will suffer great and irreparable loss.

"Wherefore, the plaintiff prays the court to appoint forthwith a receiver or receivers of the defendant corporation, as prayed in his said amended petition."

On said date, March 29, 1932, without notice to relator and without hearing evidence on the question, the motion was sustained and receivers appointed by an order as follows:

"It appearing to the court from the verified allegations of the amended petition and separate affidavit and motion of plaintiff that a condition exists which makes it imperative that the court appoint a temporary receiver, and in pursuance thereof the court appoints Joseph B. Thompson, Superintendent of the Insurance Department, of the State of Missouri, and Montague Lyon, Esq., Receivers of the Missouri State Life Insurance Company, a corporation, and Joseph F. Holland, Esq., attorney at law, and James T. Blair, Esq., attorney at law, as attorneys for said Receivers, said Montague Lyon, Esq., to file a satisfactory bond in the sum of one hundred thousand dollars ($100,000) to be approved by the court. Bond filed and approved.

Order to show cause why appointment of Receivers should not be made permanent returnable on April 14, 1932.

"(Signed)  ROBERT W. HALL, Judge."

Relator was duly served as defendant in Duggan v. Missouri State Life Insurance Company et al., but did not answer or otherwise plead in said cause. In this connection relator contends that it was not required to plead in said cause for the reason the suit was for its benefit. [Edwards v. Gas Co., 91 Fed. 942.] Respondent judge does not agree to this contention. He contends that the prayer to the original petition for general relief was notice to relator that receivers might be appointed.

On learning of the appointment of receivers, relator petitioned for our writ of prohibition. The petition was granted and our provisional rule issued.

The return of respondent judge alleged in substance that the original and amended petitions verified by the oath of plaintiff Duggan, when considered with the failure of relator to plead in said cause, not only authorized the appointment of receivers, but authorized said appointment without actual notice to relator. It further alleged that the Superintendent of Insurance was charged with the administration of the Insurance Department, was familiar with the affairs of relator, and with the arm of the court to support him would maintain the solvency of relator and extricate it "from its unfavorable position caused by the acts of mismanagement charged in the amended petition in the Duggan suit." It further alleged that Montague Lyon was a lawyer of extensive business experience and for that reason would be helpful to the Superintendent of Insurance as co-receiver.

It will be noted that said lawyer was not appointed because of knowledge of the life insurance business. Of course, he was not appointed because he was a lawyer, for respondent judge named two attorneys upon whom would rest the legal responsibilities of the receivership.

The return of the Superintendent of Insurance admitted his appointment but alleged that he had not qualified as receiver. It then adopted relator's contention that the Insurance Code provided an exclusive method of supervision, regulation and liquidation of insurance companies, and for that reason respondent judge exceeded his jurisdiction by appointing receivers. It then stated that the Superintendent consented to an absolute rule of prohibition.

The return of respondent Montague Lyon admitted his appointment and alleged that he qualified as receiver. It further alleged that he had not interfered with the business of relator and that pending this proceeding he would not do so. Relator moved for judgment on the pleadings.

The right of Duggan to sue the individual defendants for the benefit of himself, relator and other stockholders is not questioned. But relator contends that the Insurance Code is exclusive and for that reason respondent judge was without authority to appoint receivers.

The first section of the Insurance Code follows:

"The insurance department shall be charged with the execution of all laws now in force, or which may be hereafter enacted, in relation to insurance and insurance companies doing business in this State." [Sec. 5670, R. S. 1929.]

It then locates the insurance department and provides for expenses. It provides for a chief officer and assistants. It sets forth general and detailed duties of the chief officer, including the power to examine into the affairs and good faith of corporations, associations. or persons engaged in or claiming to be engaged in, organizing or receiving subscriptions for stock, or in any manner aiding in the formation or business of an insurance company.

It directs the superintendent to inquire into violations of the insurance laws and directs him to examine into the financial condition, affairs and management of insurance companies. He is given power to compel the production of assets, contracts, books and papers and may compel directors, officers and other employees to appear for examination under oath as to conditions, affairs and managements. It gives him power to punish any person failing or refusing to obey an order to produce books and papers, or to appear as a witness. And any person testifying falsely before the superintendent is guilty of perjury. The records of the department must be open to the public and certified copies of any record, paper, report or document on file must be furnished on payment of fees allowed by law.

The next article of the Code provides for the formation of life and accident insurance companies. Its many provisions are for the protection of policyholders, stockholders and the public. Among them the superintendent is given power to proceed against a company if the condition of its deposited securities render the issuing of additional policies injurious to the public. It also provides for annual reports to the superintendent giving a detailed statement of the business and its condition at the end of the year.

The general provisions of the Code provide that "no action shall be brought or maintained by any person other than the superintendent of the insurance department of this state for the winding up or dissolution of any insurance company, or the distribution of its assets among its creditors." [Sec. 5912, R. S. 1929.] The superintendent, on information from any source that a company is in financial difficulty and that its continuance in business might be hazardous or that it is insolvent, may institute suit to enjoin said company from continuing business either temporarily or perpetually, or for its dissolution, "or for such other relief *as under the provisions of this law*

the court shall deem advisable.'' [Sec. 5941, R. S. 1929.] He is also given power, either before or after suit, to call on a company to cover any deficiency. If it fails to do so within a reasonable time, he may proceed against it as insolvent. [Sec. 5939, R. S. 1929.] Complete procedure is provided for enforcement of the powers given the superintendent. [Secs. 5942, 5943, 5944, 5945 and 5946, R. S. 1929.] The last named section provides that on motion of the superintendent, the court may appoint an agent to temporarily take charge of the property of defendant insurance company and receive its income. On giving bond fixed by the court, he may act as agent until dissolution of the company, unless sooner removed. He is denied authority to employ attorneys or incur any expense, and in full compensation for his services is paid $150 per month until final judgment. The possession of the agent is the possession of the court.

On dissolution of the company the absolute title to its assets is vested in the superintendent for the benefit of creditors, policyholders and others interested (Sec. 5947, R. S. 1929), and under certain conditions he may reinsure the business of an insolvent company. [Sec. 5953, R. S. 1929.]

The legislative power to authorize, supervise, regulate and liquidate insurance companies rests on the interests of the public in the insurance business. It is conceded that the State may through administrative officers supervise and regulate insurance companies in aid of solvency. If so, it has the power to protect those interested, in the event of insolvency. It is a valid exercise of the police power through administrative officers. [State v. Mathews, 44 Mo. 523; State ex rel. v. Hyde, 315 Mo. 681, 286 S. W. 363, 1. c. 365.] The power was first exercised in 1869 by the enactment of an Insurance Code intended to protect policyholders, stockholders and the public. [Laws 1869, p. 23.] The original Code and amendments thereto indicate an intention to regulate the business from beginning to end, thereby protecting individual and public interests. The enactment of this comprehensive Code made the State a real party in interest. The Superintendent of Insurance is the administrative officer in charge of that interest, and the courts are without authority to interfere with his administration of the Code.

Respondent judge contends that the Code is not exclusive for the reason no provision is made for an operating receiver. Insurance companies exist and thrive on public confidence. An operating receiver in charge would destroy that confidence, interfere with the administration of the Code, wreck the company and defeat the purpose of the legislation. There is no place in an exclusive Insurance Code for an operating receiver.

Respondent judge next contends that the Code infringes upon the judicial power to appoint receivers. The Code interferes with no judicial power. In providing for suits by the superintendent the

Legislature was careful to provide for the appointment of an "agent by the court to be in charge of the company's property and business until final judgment." It further provided that possession of the "agent" was possession of the court.

■ Respondent judge next contends that if the Code is exclusive it denies to Duggan "his day in court." As against the State in the exercise of its police power, Duggan has no day in court. He was able to purchase the stock because the Code authorized the formation of the company. He owns the stock subject to the provision of the Code and is in no position to contend that he is denied "his day in court," because, under the Code, the court is without authority to appoint operating receivers and thereby wreck the company.

Other contentions are made as to the constitutionality of the Code. No reasons are given for the contentions, and they are overruled.

■ Respondent judge next contends that the right of access, to papers of receivers heretofore or hereafter appointed, given to the superintendent by Section 5956, Revised Statutes 1929, shows that the Code was not intended to be exclusive. If this section is read with Sections 5957 and 5958, Revised Statutes 1929, it is clear that the words "hereafter appointed" refer to receivers appointed after the enactment of that part of the Code and pending its taking effect. The sections provide that on the death, resignation or removal of receivers, the court shall turn the administration of affairs over to the superintendent. In other words, the Legislature intended to dispense with the services of receivers for insurance companies.

It follows that the Insurance Code provides an exclusive remedy, and respondent judge was without authority to appoint receivers. [Koch v. Missouri-Lincoln Trust Co., 181 S. W. 44; Relfe v. Commercial Ins. Co., 5 Mo. App. 173; Ulmer v. Falmouth Loan & Bldg. Assn., 45 Atl. 32; Grimes v. Central Life Ins. Co., 188 S. W. 901; Union Savings & Investment Co. v. Dist. Court of Salt Lake Co., 140 Pac. 221; Jeffries v. Brown, 135 Pac. 582.]

Furthermore, Duggan did not present to the superintendent his charge of fraud against the officers. He was content to allege, on information and belief, that the superintendent did not take action to recover the money, although he had knowledge of the fraud. Assuming mismanagement and fraud, for aught that appears the superintendent was active to correct that condition without injury to the company. [Edwards v. Gas. Co., 91 Fed. 942.] It must be presumed that he was faithful in the absence of evidence to the contrary.

Furthermore, plaintiff Duggan, respondent judge and the Superintendent of Insurance state that the Missouri State Life Insurance Company is solvent. And it is clear from the record that the sole purpose of those interested in the Duggan suit was to force said company into a receivership. The appointment of the Superintendent of Insurance as receiver shows that those interested in said suit knew

that the proceeding would force a dissolution of the company. After the dissipation of large sums of the company's money for expenses, fees and allowances to those directly and indirectly interested, the superintendent as statutory undertaker would be at hand to distribute the remains.

The right of the Superintendent of Insurance to serve as receiver of an insurance company is not presented. We make no ruling on that question. And the remedy on refusal of the superintendent to act because of collusion, fraud or misconduct on his part, is not presented. On that question we make no ruling.

The provisional rule should be made absolute. It is so ordered. All concur.