AETNA INSURANCE COMPANY, a Corporation, et al. v. R. E. O'MALLEY (Substituted for JOSEPH B. THOMPSON, who was in turn substituted for BEN C. HYDE), Superintendent of the Insurance Department of the State, Appellant.

JOHN T. BARKER and FLOYD E. JACOBS, AETNA INSURANCE COMPANY, a Corporation, et al., v. R. E. O'MALLEY (Substituted·for JOSEPH B. THOMPSON, who was in turn substituted for BEN C. HYDE), Superintendent of the Insurance Department of the State, Appellant, GLENN C. WEATHERBY, Respondent.—124 S. W. (2d) 1164.

Court en Banc, April 4, 1939.

*Roy McKittrick,* Attorney General, and *Drake Watson,* Assistant Attorney General, for appellant; *Charles L. Henson* of counsel.

1234

*Hogsett, Murray, Trippe & Depping* and *Frank Brockus* for John T. Barker and Glenn C. Weatherby.

*Charles M. Howell* for Floyd E. Jacobs.

*Robert J. Folonie, E. R. Morrison* and *Homer H. Berger* for plaintiffs insurance companies.

*William M. Raines, amicus curiae; Thos. E. Deacy* of counsel.

TIPTON, J.—This is an appeal from an order of the Circuit Court of Cole County, Missouri, allowing the respondents a fee out of the funds of the restitution proceedings, growing out of what are commonly known as the ten per cent fire insurance rate reduction cases.

As these cases have been before this court on several occasions, a brief statement of their history will be sufficient. On October 9, 1922, the Superintendent of Insurance ordered a reduction of ten per cent in rates in this State on all classes of fire, lightning, hail and windstorm insurance effective November 15, 1922. Approximately 155

insurance companies filed a petition for review in the Circuit Court of Cole County. At the beginning of the review proceedings the trial court made an order, pursuant a stipulation signed by attorneys for the companies and the insurance superintendent, allowing the companies to collect the old rate, on condition that in event the companies were unsuccessful they were to refund the excess premiums they collected to the policyholders. The trial court found in favor of the companies. We reversed that judgment in the case of Aetna Ins. Co. v. Hyde, 315 Mo. 113, 285 S. W. 65, and our mandate directed that the defendant (the Superintendent of Insurance) be restored all things which he had lost by reason of the judgment of the trial court. In August, 1929, the companies began refunding to the policyholders the excess premiums collected by them under and by virtue of the stipulation and court order referred to, but it became apparent to the Superintendent of Insurance that only a portion of the excess collection of premiums had been refunded. In June, 1930, the Superintendent of Insurance with the approval of the Governor, under Section 5678, Revised Statutes 1929, employed respondents Barker and Jacobs to institute proceedings against the companies to recover the balance of the excess premiums collected by the companies which belonged to the policyholders. The terms of the contract of employment were that if these respondents were successful in recapturing this residue, they should be paid from these funds for their services, such an amount as the court deemed adequate, but if they were unsuccessful in their efforts they were to receive no pay. On December 1, 1930, respondent Weatherby was also employed by the superintendent with the approval of the Governor to aid the other respondents, on the same terms as the contract of employment of respondents Barker and Jacobs.

These respondents filed a motion for restitution in the Circuit Court of Cole County and in May, 1933, that court entered an interlocutory judgment against the companies for the total sum of the excess premiums collected, but allowed them credit for the amount actually refunded. After this judgment had been rendered the companies applied to this court for prohibition, which we denied in the case of State ex rel. Abeille Fire Insurance Co. v. Sevier, 335 Mo. 269, 73 S. W. (2d) 361. On December 7, 1935, that court entered a final judgment against the companies in an amount in excess of $2,750,000. Thereafter, the companies paid into that court the full amount of the judgment, and by agreement with the superintendent released all right or claim to any of the moneys paid into court on such judgment of restitution, whether the same could be returned to the policyholders or not.

After this fund was paid into court the respondents filed their motion and application for allowance of fees as the attorneys of the

Superintendent of Insurance, trustee for the policyholders, on account of the creation, maintenance and preservation of that fund. Later, respondent Weatherby filed a separate application on which a hearing was had. Later, a hearing, on the joint application of respondents, Barker and Jacobs, was held. At these hearings respondents offered testimony of members of the ·bar as to the reasonable value of their services in the restitution proceedings, which varied from fifteen to twenty-five per cent of the amount recovered. The trial court made an allowance of fifteen per cent as attorneys' fees out of the fund, it allowing respondent Weatherby the sum of $137,-500, and respondents Barker and Jacobs the sum of $275,000, and declared a lien upon the fund for these amounts. Other pertinent facts will be stated in the course of the opinion.

Both sides agree that this is a proceeding in equity. It being an equity case, it is considered here *de novo* on appeal with authority to pass upon the weight of the evidence, although we usually defer to findings of the chancellor, depending upon the credibility of witnesses who appear before him. [Peikert v. Repple et al., 342 Mo. 274, 114 S. W. (2d) 999; Gehlert v. Smiley, 114 S. W. (2d) 1029.] While we do weigh the evidence on an appeal, we have no authority to pass on assignments of error which were not called to the trial court's attention in the motion for a new trial. [Keaton v. Keaton, 74 Mo. App. 174; Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297.] "In that particular the trial of an equity case does not differ from the trial in a lawsuit; if the losing party in an equity case does not file a motion for a new trial or rehearing and give the trial an opportunity to correct its own error, if error there be, he cannot ask an appellate court to do so." [Berry v. Bond, 209 Mo. 662, l. c. 673, 108 S. W. 22.] We make these observations because respondents claim that several of the points relied upon by the appellant are not raised in his motion for a new trial.

Did the Superintendent of Insurance have the authority to employ the respondents in these restitution proceedings? Before a state officer can enter into a valid contract he must be given that power either by the Constitution or by the statutes. All persons dealing with such officers are charged with knowledge of the extent of their authority and are bound, at their peril, to ascertain whether the contemplated contract is within the power conferred. Such power must be exercised in manner and form as directed by the Legislature. [State v. The Bank of the State of Missouri, 45 Mo. 528; State to the· use of Public Schools, etc., v. Crumb, 157 Mo. 545, 57 S. W. 1030; State ex rel. Blakeman v. Hays, 52 Mo. 578; State v. Perlstein (Tex. Civ. App.), 79 S. W. (2d) 143; 59 C. J., sec. 285, p. 172, sec. 286.] In the last citation the author says: "Public officers have and can exercise only such powers as are conferred on them by law, and a

1240

state is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or the Constitution, unless such authorized contracts have been afterward ratified by the Legislature. ■ An agreement not legally binding on the state may, however, impose a moral obligation. The doctrine of estoppel, when invoked against the state, has only a limited application, even when an unauthorized contract on its behalf has been performed, and thereby the state has received a benefit, and so it is held that a state cannot by estoppel become bound by the unauthorized contracts of its officers; nor is a state bound by an implied contract made by a state officer where such officer had no authority to make an express one."

■ With these principles in mind we look to see if authority was given by the Legislature to the Superintendent of Insurance to employ attorneys. Section 5678, Revised Statutes 1929, among other things, provided that: "The attorney general shall be his legal adviser, but the superintendent may, with the approval of the governor, employ other counsel for the purpose of enforcing the insurance laws, except in criminal prosecutions." The appellant contends that the quoted portion of the above section is unconstitutional in that it violates Section 1 of Article V of our State Constitution. No such question was raised in the trial court, nor was such question raised in his motion for a new trial. We have repeatedly ruled that a constitutional question must be raised at the earliest possible time, and kept alive. Under the condition of the record, this question is not before us.

There is no doubt that the Superintendent of Insurance, with the approval of the Governor, had a right to employ these respondents to represent him in the restitution proceedings. Section 5874, Revised Statutes 1929, provides that during the pendency of the litigation of a rate reduction case the amount of the premiums in dispute shall be deposited with the superintendent and "in the event his orders and directions shall be sustained, then such funds shall be turned over to the policyholders pro rata." In the case of State ex rel. Abeille Fire Insruance Company v. Sevier, supra, we held that it was the duty of the superintendent to get for the policyholders their rights under the law, consequently, the respondents were employed to enforce the insurance laws. We hold that the superintendent did have a right to employ the respondents in the restitution proceedings.

But it does not follow that the Superintendent of Insurance had a right to make a contract of employment that respondents were to be paid for their services out of the fund restored to him. It is to be noted that Section 5678, supra, does not specify how an attorney who has been employed by the superintendent is to be paid, nor is there any

provision in the Insurance Code as to the method. "A statute merely giving an official power to employ counsel with consent of the governor does not convey the right to fix his compensation. . . ." [59 C. J. 174, sec. 290.] It, therefore, follows that the Superintendent of Insurance had a right to employ the respondents, but did not have the power to contract that their compensation should be paid out of this fund.

Respondents contend that as they were lawfully employed, and were not intermeddlers, the court had inherent power as a court of equity to order the payment of reasonable counsel fees out of the fund recovered from the insurance companies in the restitution proceedings. In other words, the respondents contend that under a contract of employment, they recovered a fund of about $2,750,000 for the benefit of the policyholders and therefore are entitled to impress a lien upon such fund and be paid therefrom, because such fund was created and preserved and will be distributed to the policyholders through their efforts. The following cases do hold that where an attorney is lawfully employed and through his efforts a fund is created for the benefit of various claimants, the court has inherent power to allow reasonable attorneys' fees out of the fund thus created, and he will be entitled to a lien on such fund to secure the payment of the fee: Lindheimer et al. v. Illinois Bell Tel. Co., 292 U. S. 151, 54 Sup. Ct. 568; Board of Education of Lonoke County v. Lonoke County, 181 Ark. 1046, 29 S. W. (2d) 268; Haynie, Parks & Westfall et al. v. Camden Gas Corp. et al. (Ark.), 56 S. W. (2d) 419; Central Railroad & Bank Co. v. Pettus, 113 U. S. 116; Hempstead v. Theological School, 286 Pa. 493, 143 Atl. 103, 49 A. L. R. l. c. 1146; Colley v. Wolcott, 187 Fed. l. c. 596; Trautz v. Lemp, 334 Mo. 1085, 72 S. W. (2d) 104; Henderson v. Elam, 232 S. W. 469; State ex rel. Anderson v. Roehrig, 320 Mo. 870, 8 S. W. (2d) 998; Robinson v. Dundee Land & Inv. Co., 80 Mo. App. 621; Winton v. Amos, 255 U. S. 372.

However, we do not believe these cases are in point for the reason that the above equitable principles have been superceded by the Insurance Code of this State. In the case of State ex rel. Missouri State Life Insurance Co. v. Hall, 330 Mo. 1107, l. c. 1116, 52 S. W. (2d) 174, we said:

"The legislative power to authorize, supervise, regulate and liquidate insurance companies rests on the interests of the public in the insurance business. It is conceded that the State may through administrative officers supervise and regulate insurance companies in the aid of solvency. If so, it has the power to protect those interested, in the event of insolvency. It is a valid exercise of the police power through administrative officers. [State v. Matthews, 44 Mo. 523; State ex rel. Mackey v. Hyde, 315 Mo. 681, 286 S. W. 363, l. c. 365.]

The power was first exercised in 1869 by the enactment of an Insurance Code intended to protect policyholders, stockholders and the public. [Laws 1869, p. 23.] *The original Code and amendments thereto indicate an intention to regulate the business from beginning to end, thereby protecting individual and public interests. The enactment of this comprehensive Code made the state a real party in interest. The Superintendent of Insurance is the administrative officer in charge of that interest, and the courts are without authority to interfere with his administration of the Code.*" (Italics ours.)

The fund in the restitution suit was not impounded by virtue of any court order (State ex inf. McKittrick v. American Colony Ins. Co., 336 Mo. 406, 80 S. W. (2d) 876; Aetna Ins. Co. v. O'Malley, H. P. Lauf, L. H. Cook and Gilbert Lamb, 342 Mo. 800, 118 S. W. (2d) 3), but was accumulated by virtue of Section 5874, supra, which, among other things, provides:

"During the pendency of such action or review, the orders and directions of the superintendent of insurance, as to reduction of rates, shall be suspended, but all such insurance companies shall, during the pendency of such action or review, deposit with the superintendent of insurance on all policies issued or renewed after the date of such order or direction, and until the final determination of such action, an amount equal to the difference between the rates fixed by the superintendent in his order and those in effect prior thereto, such funds to be held by the superintendent of insurance to await the result of such review, and in the event the orders and directions of the superintendent be set aside, such funds shall be returned to the companies pro rata, and in the event his orders and directions shall be sustained, then such funds shall be turned over to the policyholders pro rata."

The trial court, being without authority to interfere with the Insurance Code of this State, it follows that it erred in allowing the respondents fees from the impounded fund. As above stated, Section 5678, supra, does give the Superintendent of Insurance, with the approval of the Governor, authority to employ attorneys to enforce the insurance laws of this State, yet the only way such attorneys can be paid is like any other expense of the insurance department, that is, by an appropriation of the Legislature. For instance, suppose an attorney were employed to defend a rate reduction order of the insurance commissioner, and after many years of litigation the court suspended the rate. The only conceivable way he could be paid would be through an appropriation of the Legislature. So, in the case at bar, the respondents must look to the Legislature for the payment of their fees.

From what we have said, it follows that the judgment of the trial court must be reversed. It is so ordered. All concur.