The STATE of Missouri, at the Relation of Mildred B. JOHNSON, Administratrix of the Estate of John T. Barker, and Mary G. Jacobs, Executrix of the Estate of Floyd E. Jacobs, Appellants,

v.

C. Lawrence LEGGETT, Superintendent of the Division of Insurance, Respondent.

Mildred B. JOHNSON, Administratrix of the Estate of John T. Barker, and Mary G. Jacobs, Executrix of the Estate of Floyd E. Jacobs, Appellants,

v.

C. Lawrence LEGGETT, Superintendent of the Division of Insurance, Aetna Insurance Company, a Corporation, State Farm Mutual Insurance Company, a Corporation, and Hardware Mutual Casualty Company, a Corporation, Respondents.

Nos. 48716, 48717.

Supreme Court of Missouri,

Division No. 1.

July 16, 1962.

Motion for Rehearing or for Transfer to Court en Banc Denied Sept. 10, 1962.

Walter A. Raymond, Kansas City, and Terence C. Porter, Columbia, for plaintiffs-appellants.

Thomas F. Eagleton, Atty. Gen., Jefferson City, and Harry H. Kay, Sp. Asst. Atty. Gen., Eldon, for defendant, respondent, Superintendent of the Division of Insurance.

George A. Spencer and Roger D. Hines, Columbia, for defendant, respondent, Hardware Mutual Casualty Company.

Thos. E. Deacy and Deacy & Deacy, Kansas City, for defendant-respondent State Farm Mutual Automobile Insurance Company.

Thompson Mitchell Douglas & Neill, James M. Douglas, J. Richard Skouby, St. Louis, for respondent, Aetna Insurance Company.

HOLLINGSWORTH, Judge.

These are appeals taken by the legal representatives of John T. Barker and Floyd E. Jacobs, both deceased, from judgments of the Circuit Court of Cole County

dismissing petitions of decedents for review of an order of the Superintendent of Insurance denying claims for attorneys fees allegedly owing Barker and Jacobs by the Division of Insurance since 1936.[1] Jurisdiction is in this court for the reasons that (1) more than $15,000 is involved in each case and (2) the Superintendent of the Division of Insurance (of Missouri) is a party defendant in each case. The first case, No. 48,716, in which the superintendent of insurance is the sole defendant, is an action for mandamus and certiorari. The second case, No. 48,717, in which the superintendent of insurance is sued and joined with him are the above named insurance companies, as representatives of certain classes of insurance companies against whom, it is alleged, an assessment of the fees herein sought could be made by the superintendent, is an action seeking a declaratory judgment and an injunction.

The facts are not in dispute. In one form or another, the basic questions here presented have been considered by this court on many occasions. In substance, as gleaned from the early case of Aetna Insurance Company v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, the facts may be thus briefly stated: On October 9, 1922, the superintendent of insurance ordered a reduction of ten per cent in rates in this state on all classes of fire, lightning, hail and windstorm insurance effective November 15, 1922. Approximately 155 insurance companies filed a petition for review in the circuit court of Cole County. At the beginning of the review proceedings the trial court made an order, pursuant to a stipulation signed by attorneys for the companies and the insurance superintendent, allowing the companies to collect the old rate, on condition that in event the companies were unsuccessful they were to refund the excess premiums to the policyholders. The trial court found in favor of the companies. That judgment was reversed in this court, Aetna Insurance Company v. Hyde, 315 Mo. 113, 285 S.W. 65, and the mandate directed that the defendant (the superintendent of insurance) be restored all things he had lost by reason of the judgment of the trial court. In August, 1929, the companies began refunding the excess premiums collected by them under and by virtue of the stipulation and court order referred to. It, however, became apparent to the superintendent of insurance that only a portion of the excess collection of premiums was in fact refunded. In June, 1930, the superintendent of insurance, with the approval of the governor, acting under what is now § 374.120 RSMo 1959, V.A.M.S.,[2] employed John T. Barker and Floyd E. Jacobs to seek recovery of the balance of the excess premiums collected by the companies which belonged to the policyholders.

The terms of the contract of employment were that if those attorneys were successful in recapturing this residue, they should be paid *from these funds* for their services such an amount as the court deemed adequate, but if they were unsuccessful in their efforts they were to receive no pay.[3] (On December 1, 1930, Glenn C. Weatherby, whose name will appear in some of the cases dealing with the facts involved, was also employed by the superintendent, with the approval of the governor, to aid Barker and Jacobs, on the same terms.)

Hearing of motions filed in the circuit court of Cole County in May, 1933, by Barker and Jacobs, resulted in a judgment rendered on December 7, 1935, against the companies requiring them to pay into court the sum of $2,750,000 in excess of the amount theretofore refunded, which was

1. Messrs. Barker and Jacobs died subsequent to the filing of their claims and their respective legal representatives have been duly substituted in their stead.

2. Statutory references, insofar as practicable, are to RSMo 1959, V.A.M.S.

3. Emphasis shown is that of this writer unless otherwise indicated.

paid over to and held by the superintendent in accordance with Section 5874, R.S.1929 (§ 379.390 RSMo 1959, V.A.M.S.), providing:

"[U]ntil the final determination of such action, an amount equal to the difference between the rates fixed by the superintendent in his order and those in effect prior thereto, such funds to be held by the superintendent of insurance to await the result of such review, and in the event the orders and directions of the superintendent be set aside, such funds shall be returned to the companies pro rata, and in the event his orders and directions shall be sustained, then such funds shall be turned over to the policyholders pro rata."

Barker and Jacobs thereupon filed motions for allowance of fees out of the said fund of $2,750,000. The trial court made an allowance of 15 per cent as attorneys' fees out of the fund, allowing Weatherby the sum of $137,500, and Barker and Jacobs the sum of $275,000, and declaring a lien upon the fund for these amounts. The superintendent of insurance appealed to this court. The first question considered by this court in deciding the appeal was: Did the superintendent of insurance have the authority to employ the respondents in these restitution proceedings? In discussing that question, the court (in Aetna Insurance Company v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, 1166) stated: "Before a state officer can enter into a valid contract he must be given that power either by the Constitution or by the statutes. All persons dealing with such officers are charged with knowledge of the extent of their authority and are bound, at their peril, to ascertain whether the contemplated contract is within the power conferred. Such power must be exercised in manner and form as directed by the Legislature. [Cases cited.]" The court in that case also quoted from 59 C.J., § 286, page 172: "Public officers have and can exercise only such powers as are conferred on them by law, and a state is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or the constitution, unless such authorized contracts have been afterward ratified by the legislature. An agreement not legally binding on the state may, however, impose a moral obligation. The doctrine of estoppel, when invoked against the state, has only a limited application, even when an unauthorized contract on its behalf has been performed, and thereby the state has received a benefit, and so it is held that a state cannot by estoppel become bound by the unauthorized contracts of its officers; nor is a state bound by an implied contract made by a state officer where such officer had no authority to make an express one."

The court then stated, 124 S.W.2d loc. cit. 1167: "We hold that the superintendent did have a right to employ the respondents in the restitution proceedings. But it does not follow that the superintendent of insurance had a right to make a contract of employment that respondents were to be paid for their services *out of the fund restored to him.* It is to be noted that Section 5678 (§ 374.120) supra, does not specify how an attorney who has been employed by the superintendent is to be paid, nor is there any provision in the insurance code as to the method. 'A statute merely giving an official power to employ counsel with consent of the governor does not convey the right to fix his compensation, * * *.' 59 C.J. 174, Section 290. It, therefore, follows that the superintendent of insurance had a right to employ the respondents, *but did not have the power to contract that their compensation should be paid out of this fund.*"

In so holding the court cited and reasserted the principles of law announced in the case of State ex rel. Missouri State Life Ins. Co. v. Hall, Judge, 330 Mo. 1107, 52 S.W.2d 174, 177, which held: "The legislative power to authorize, supervise, regulate, and liquidate insurance companies rests on the interests of the public in the

insurance business. It is conceded that the state may through administrative officers supervise and regulate insurance companies in aid of solvency. If so, it has the power to protect those interested, in the event of insolvency. It is a valid exercise of the police power through administrative officers. [Cases cited.] The power was first exercised in 1869 by the enactment of an Insurance Code intended to protect policyholders, stockholders, and the public. Laws 1869, p. 23. The original Code and amendments thereto indicate an intention to regulate the business from beginning to end, thereby protecting individual and public interests. The enactment of this comprehensive Code made the state a real party in interest. The superintendent of insurance is the administrative officer in charge of that interest, and courts are without authority to interfere with his administration of the Code."

The ultimate holding in Aetna Ins. Co. v. O'Malley, supra, 124 S.W.2d 1164, 1168, was: "The trial court being without authority to interfere with the insurance code of this state, it follows that it erred in allowing the respondents fees from the impounded fund. As above stated, Section 5678 (§ 374.120) supra, does give the superintendent of insurance, with the approval of the governor, authority to employ attorneys to enforce the insurance laws of this state, *yet the only way such attorneys can be paid is like any other expense of the insurance department, that is, by an appropriation of the legislature. * * * So, in the case at bar, the respondents must look to the legislature for the payment of their fees.*" The ruling in this case has been many times approved and until recently the ruling therein announced was no longer questioned. Weatherby v. Jackson, 358 Mo. 542, 215 S.W.2d 742, 743; Jacobs et al. v. Leggett et al., Mo., 295 S.W.2d 825; Barker et al. v. Leggett, Mo., 295 S.W.2d 836; and cases cited in each of them.

In 1941 (Laws 1941, p. 396, now § 379.-395), the legislature passed an escheat statute dealing with unclaimed funds in the hands of the superintendent of the Division of Insurance. It provided, in substance, that, after diligent effort and failure to locate the owners of any funds (which included a very substantial portion of the funds in the hands of the superintendent recovered by Barker, Jacobs and Weatherby under the restitution proceedings), it was the duty of the superintendent to pay the same to the state treasurer, and that after allowing a period of five years for the reclamation of any portion of said funds by any *owners* of a portion thereof, *the fund was to be transferred to the general revenue fund of the state.*

Thereafter, Weatherby, Jacobs and Barker filed suits to impress any unclaimed portion of these funds remaining in the hands of the state treasurer with a lien for their fees. Unsuccessful in the trial court, they appealed to this court. In an opinion disposing of those appeals, Weatherby, Jacobs and Barker v. Jackson (three cases), 358 Mo. 542, 215 S.W.2d 742, this court stated that plaintiffs did not ask the court to overrule the opinion written in Aetna Ins. Co., v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, but relied upon the provisions of the escheat act. (The opinion in those cases also noted that the legislature had priorly recognized *its authority* to compensate attorneys employed by the superintendent of insurance in these cases by appropriating for the use and benefit of Messrs. Barker and Jacobs the sum of $150,000 [reduced by the governor to $100,000], as shown by Laws 1931, p. 69, § 11; and further noted that in the case of Lucas v. Lamb, 348 Mo. 900, 156 S.W.2d 634, loc. cit. 637, the court, anticipating early enactment of the escheat statute, had pointedly said: "If, as contended * * *, the State shall become the ultimate beneficiary of a part of this fund, the question of [Weatherby's, Jacobs' and Barker's] reimbursement *may be addressed to the General Assembly.*") The

opinion then noted that there was no language in the escheat statute that could be construed to mean that the circuit court was given authority to allow attorney fees to any person and to order them paid out of this fund, which led the court to further note that the legislature was careful to protect the fund against any claims except those of persons or corporations *to whom the money actually belonged*, and that the claims, if at all allowable, could only be allowed by the legislature; and further *"that the cost of litigation establishing these claims should not be assessed against the fund."*

The opinion, 215 S.W.2d 742, 744, then concluded with these words: "We therefore hold that the only authority given to the circuit court by the section in question is authority to determine whether the fund, or any part thereof, belongs to any person or corporation making claim therefor. The word 'claim,' as used in the statute, was evidently used in such a restricted sense. Certainly, in view of the decisions of this court in the various cases, holding that the claimants in the present cases must look to the legislature for payment of their claims, and further, that the Circuit Court of Cole County has no jurisdiction to allow them, the legislature, had it intended to vest the court with such jurisdiction, would have said so in plain and unmistakable language. Furthermore, there is no apparent reason why the legislature would vest the circuit court with such authority. The legislature in the past has appropriated money to pay attorneys and there is no reason why it cannot do so again if it deems the claims meritorious. *Whether they are, or are not, we have no authority to say in this case."*

Thereafter, Barker and Jacobs attempted from time to time to induce the legislature to appropriate additional funds to compensate them for services rendered in procuring restoration of $2,750,000 for the benefit of Missouri policyholders. Their efforts in that respect were unsuccessful. In 1951, the balance of the fund was transferred to the general revenue funds of the state.

In 1953, Jacobs and Barker, as plaintiffs, filed two other actions, both of which again sought recovery of these fees. The first was against C. Lawrence Leggett, superintendent of insurance, and joined with him as defendants were the state treasurer, the state auditor and director of revenue. Count one of the petition in that case sought recovery of $275,000, such sum to be impressed as a lien on the aforesaid escheated funds, and for other relief. Count two thereof sought a declaratory judgment. The second suit was against the superintendent of insurance to recover quantum meruit the value of their services. Motions filed by the defendants in each case to dismiss were sustained in the trial court and both cases came on appeal to this court. The judgment of the trial court was affirmed in both cases. The court also held (in the first case) that the judgment denying plaintiffs' right to enforcement of a lien against the residue of the escheated funds did not deny plaintiffs of any timely pleaded constitutional right and that neither were they entitled to declaratory relief. The first case, 295 S.W.2d 825, 831 [5, 6] [7], also recited facts and quoted from adjudicated cases clearly establishing that plaintiffs had long since waived any constitutional right granted under the 14th Amendment to the Constitution of the United States, and Section 10, Article I, of the Constitution of Missouri, V.A.M.S. In the second case, the court held that an action in quantum meruit would not lie, that denial of the right to recover did not deprive plaintiffs of any timely pleaded constitutional right and that the escheat law was not an ex post facto law. See Jacobs et al. v. Leggett et al., 295 S.W.2d 825, and Barker et al. v. Leggett, Mo., 295 S.W.2d 836, to which cases reference is made for a more extended statement bearing upon and pertinent to the conclusions herein reached.

During the course of the opinion in the second case, 295 S.W.2d loc. cit. 840, it was also stated: "We believe it is the intent of the insurance code to vest the superintendent with primary jurisdiction to *approve* the usual expenses and to *assess* the expenses of proceedings against companies. We believe this right of primary decision by the superintendent is exclusive, subject only to review by the courts in the manner provided in the insurance code or as otherwise provided by Chapter 536, RS Mo 1949, V.A.M.S., and more particularly § 536.100 dealing with judicial review of administrative decisions." (Emphasis is that shown in published opinion.)

Encouraged by the recognition given by this court of the right of review provided by the Administraitve Procedure and Review Act, Chapter 536, Barker and Jacobs filed with the superintendent of insurance a new application for the allowance of said fees and for recovery of expenses incurred in connection with their services. This application presented in great detail the facts above outlined. See State ex rel. Leggett v. Jensen, Judge, Mo., 318 S.W.2d 353, 355. The principal relief sought was that the superintendent:

"(a) Accept jurisdiction of and recognize these claims and this and preceding applications as merged herein.

"(b) Proceed under the Insurance Code and Chapter 536, R.S.Mo. 1949, on notice to hear and determine this application and preceding applications praying allowance of the claims as set forth herein, and to hear evidence thereon.

"(c) Allow and approve these claims as expenses of the Insurance Department in a full and adequate reasonable amount as may be justified by the evidence which will be presented by the applicants.

"(d) Determine whether these claims and each of them (1) should be allowed as expenses of 'proceedings' against insurance companies involved in the restitution proceedings, and assessed against them ratably; or (2) are usual expenses of the Division (formerly Department) of Insurance payable out of amounts appropriated by law from the Insurance Division fund on warrants issued on such fund on vouchers approved by the Superintendent and Comptroller."

The superintendent thereupon sought advice both from the attorney general and from counsel for interested insurance companies as to the proper course of procedure. The attorney general gave it as his opinion that "under the provisions of Section 374.-220, RSMo 1949, you do have jurisdiction to consider and determine the application now before you. As we have pointed out above, there is no statutory requirement that a hearing for such purpose be held. We think it obvious that the Superintendent is not required to hold a hearing on every claim or question that may be presented to him for determination. However, the circumstances of the present application may be such that denial of a hearing would be considered by a reviewing court to be an arbitrary and unreasonable act. Determination of the procedure is, we feel, primarily a matter within your discretion."

Thereafter, on February 7, 1958, the superintendent, declining to afford plaintiffs a hearing on said claims, advised plaintiffs' counsel by letter as follows:

"After a careful review of all the matters which have been submitted to me in connection with the above mentioned claims, I have concluded that I am not required by law to grant a hearing upon the applications before making a decision upon them.

"Even though I am not required by law to grant applicants a hearing upon

their claims before deciding them, I assume that I could grant such a hearing if I thought the same would enable me better to rule upon the claims. However, it is my view that even though I should hold a hearing on these claims and should conclude after such hearing that applicants had been lawfully employed as claimed in the applications, and had rendered valuable services pursuant to said employment, the value of the services of claimants could not be allowed as expenses of the insurance department which could be paid out of current appropriations, as provided by Section 374.160, R.S.Mo. 1949, nor could the value of said services be assessed against insurance companies as expenses of proceedings against such insurance companies as contemplated by Sections 374.160 and 374.220, R.S.Mo.1949.

"In view of the above, I am respectfully denying your application for a hearing upon these claims, and must deny the claim."

Deeming their application to be a "contested case", as that term is defined in § 536.010, plaintiffs filed a petition for review in the circuit court of the county of plaintiffs' residence, Jackson County, as required for review of "contested cases" under § 536.110. The superintendent of insurance, challenging plaintiffs' right to a review of the refusal of the superintendent to grant them a hearing on their claim for fees under the provisions of § 536.100, sought prohibition against the judge of the circuit court of Jackson County from entertaining jurisdiction of the petition for review. State ex rel. Leggett, Superintendent, v. Jensen, Judge, Mo., 318 S.W.2d 353. In that case this court, by majority vote, held that the application filed by plaintiffs for the allowance of fees in this case was not a "contested case" as defined in § 536.100 providing for judicial review in "contested cases", and that in view of the

provisions of § 536.110 fixing the venue of petitions for review of "contested cases" in the circuit court of the residence of the plaintiffs, the circuit court of Jackson County was without jurisdiction to determine the petition for review here in question. Rather, it was held, plaintiffs' petition for judicial review of the order of the superintendent denying them a hearing on the instant application for fees was authorized by the provisions of § 536.105 and venue of an action for review of any action taken under that section was in the circuit court of Cole County, State ex rel. State Tax Commission v. Walsh, Mo., 315 S.W.2d 830, 835, and the preliminary rule in prohibition was made absolute. Anticipating the possibility of such a ruling, the plaintiffs, in the meantime, had filed in the circuit court of Cole County the petition for review here under consideration. That petition made the following contentions:

"The aforesaid decision and action of the defendant Superintendent constitutes a denial to Barker and Jacobs of due process of law, of a hearing and opportunity to be heard, and of equal protection of the law, all in violation of the constitutions of the United States and of the State of Missouri; defendant's refusal to hear, audit, allow, and provide for adequate payment of the claim of Barker and Jacobs violates their statutory and contractual rights and denies and deprives them of substantive and procedural rights as determined in the aforesaid opinions of the Missouri Supreme Court, rendered November 12, 1956; and, in addition, constitutes a violation of the rights of Barker and Jacobs under the constitutions of the United States and of the State of Missouri in the following respects:

"(a) Such denial of recourse and payment to a person by an agency or official thereof exercising judicial or

quasi-judicial functions constitutes an impairment of contract in violation of Article I, Section 10, Paragraph 1 of the Constitution of the United States and of sections 13 and 14 of Article I of the Constitution of Missouri, 1945.

"(b) Such refusal and denial of payment constitutes a deprivation of relators' liberty and property without due process of law in violation of Article I, Section 10, Constitution of Missouri, 1945, and of Section 1 of the Fourteenth Amendment to the Constitution of the United States for the reason that Barker and Jacobs are denied and deprived of any judicial or other remedy for the enforcement of their legal, equitable, and property rights.

"(c) Such refusal and denial of payment constitutes a deprivation of the right of freedom of contract of Barker and Jacobs in violation of the Fourteenth Amendment of the Constitution of the United States.

"The aforesaid action of the defendant Superintendent in failing and refusing to entertain jurisdiction of and rule upon the claims of Barker and Jacobs from 1936 to February 7, 1958 constituted an unreasonable delay in deciding the case; and his decision and action in denying their application for allowance and payment thereof without giving them notice or a hearing, formal or informal, is unconstitutional, unlawful, unreasonable, arbitrary, capricious, involves and constitutes an abuse of discretion and rightful jurisdiction, and is *coram non judice;* is unsupported by competent and substantial evidence upon the whole record; is in contravention of the aforesaid opinions of the Supreme Court of Missouri rendered November 12, 1956; and is contrary to the aforesaid opinion of the Attorney General of Missouri, the lawful legal

advisor of the defendant Superintendent."

Section 536.105, which in State ex rel. Leggett v. Jensen, Mo., 318 S.W.2d 353, we held controlling in the disposition of this case, provides:

" * * * and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; *but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.*"

Several contentions here made by plaintiffs have heretofore been finally adjudicated against them, of which adjudications we take judicial notice:

1. No allowance can ever be made plaintiffs for the fees herein claimed out of the $2,750,000 returned to the superintendent of insurance for the benefit of the policyholders, even though substantial portions of said fund have, by law, escheated to and become the property of the state.

2. Any allowance made these plaintiffs can be made only by the legislature as pro-

vided by § 374.160, and within the limits and in the manner therein provided. See cases, supra.

3. Plaintiffs have not been deprived of any constitutional right impairing the obligation of a lawful contract in violation of Article I, § 10, of the Constitution of the United States or of Article I, §§ 13 and 14, of the Constitution of Missouri. See cases, supra.

4. The refusal of the superintendent to recognize and allow said fees does not constitute deprivation of plaintiffs' liberty and property within the due process clauses of the Constitution of the United States and of the Constitution of the State of Missouri or the right of freedom of contract in violation of the Fourteenth Amendment of the Constitution of the United States. See cases, supra.

■ Assuming, as did the superintendent of insurance, that Barker and Jacobs had been lawfully employed as claimed in their respective applications and that they had rendered valuable services pursuant to their employment, the sole question remaining is: Did the superintendent err in holding that the value of their services could not be allowed as an expense of the insurance department which could be paid out of their current appropriation, as provided by § 374.160?

■ We think nothing of value can be added to what we have long since and, in some instances, frequently held ever since Aetna Insurance Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, decided in 1938. There we found and held that the contract for fees earned by Barker and Jacobs made such fees payable only from funds realized in the restitution proceeding; that the contract providing for the *payment of any such fees out of these funds was invalid;* that Barker and Jacobs were held chargeable with knowledge of that fact and were, therefore, prevented from recovering such fees from said funds under any theory of estoppel or otherwise.

It clearly follows that the very terms of the contract for fees negate, at least inferentially, their being made a legal charge against any other fund derived from any other source whatsoever. It was not shown, nor is it contended, that there was any agreement or understanding that such fees should constitute a charge against the insurance companies who had instituted the action to set aside the rate increase. Neither was it shown, nor is it contended, that there was any agreement or understanding that such fees were to constitute an expense of the insurance department to be paid monthly out of warrants issued by the state auditor on vouchers approved by the superintendent and comptroller, as provided by §§ 374.160, 374.220, 374.230 and 374.260. And, certainly, we have not been cited to any law justifying a finding under the facts here shown that the refusal of the superintendent to allow and certify them for payment by either method can be held to have deprived claimants of fees *legally* owed Barker and Jacobs.

True, it has been suggested in one or more of the opinions rendered in these cases that the legislature could recognize a moral obligation to pay for these services and of its own volition assume a quasi-legal obligation to appropriate funds for the payment of them. The superintendent of insurance, however, is merely an official of the executive branch of the state government, with powers limited to the functions prescribed by the statutes relating to the Division of Insurance. As such, he cannot be convicted of abuse of any discretionary power vested in him under those statutes in refusing to certify the fees here sought for payment by either defendant insurance companies, or any of them, or by assessing them as an expense of the Division of Insurance.

When the superintendent assumed as true the facts upon which the claims were asserted and denied them, he, in effect, reviewed and ruled them on their merits, as required by § 536.105. Such review clearly constituted due process. State ex rel. Leggett v. Jensen, Mo., 318 S.W.2d 353, 357 [3, 4]. Moreover, such review was not violative of Article I, §§ 13 and 14, of the Constitution of Missouri. Aetna Ins. Co. v. O'Malley, and Jacobs v. Leggett, both supra.

The decision herein reached makes it unnecessary to discuss the further contentions and questions raised.

The judgment of the trial court dismissing the applications for fees is affirmed.

All concur.