**Amos FINCHER, Plaintiff-Respondent,**

**v.**

**Mabel ENGLAND, Defendant-Appellant.**

**No. 9003.**

Springfield Court of Appeals,
Missouri.

Jan. 14, 1971.

J. W. Grossenheider, Lebanon, for defendant-appellant.

John F. Low, Low & Honssinger, Lebanon, for plaintiff-respondent.

HOGAN, Judge.

This is an action in ejectment, tried to the court without a jury. The court found and entered judgment for the plaintiff.[1] The defendant has appealed.

The record is remarkably diffuse and difficult to follow. For the most part it consists of defendant's "explanations," offers of proof, and tenders of defendant's 19 exhibits, the last of which is an envelope containing 151 loose papers, including the backs of envelopes, adding machine tapes, and cash sales receipts. From what was testified to and offered, we have gleaned the following background facts: The parties live in or near Lebanon, in Laclede County. During the time in question, Mr. Fincher was married, but he and the defendant enjoyed what counsel called a "special friendship." Inferably Mrs. England had been Mr. Fincher's "girl friend" for several years when this action was begun, and on occasion he had either given or loaned her money, sometimes taking token security to conceal the nature of their relationship.

The parcel of property in suit is a two and one-half acre tract in the City of Lebanon. At some time in 1957, Mrs. England bought this property and secured her obligation, according to the plaintiff, with a deed of trust. Mr. Fincher paid the balance due Mrs. England's vendor. According to defendant's offer of proof, he did this to compensate for having cheated her in another deal; plaintiff's explanation was that Mrs. England wanted him to build a house for her on her property, and he paid her vendor because "she had no hold [on the property] and I wouldn't have a house built on it unless I had the deed." Mrs. England deeded the property, which was then a vacant lot, to Mr. Fincher and his wife.

In any event, "very shortly" after the property was deeded to the plaintiff and his wife, a house was built. Plaintiff's evidence was that Mrs. England "had the [house] plan," and "I hired the men that built it." Defendant's position was, and she offered to prove, that she expended some $9,000 in building the house and improving the premises generally. After the house was finished, plaintiff, his wife and the defendant entered into a written contract whereby Mrs. England agreed to buy the property for $12,000. The contract, dated December 30, 1958, provides that the purchase price is to be paid $500 per year, with interest at the rate of six per cent, payable semi-annually.

1. Mrs. Fincher died while this action was pending. It is conceded that Mr. Fincher succeeded to his wife's title.

Though the record is difficult to follow chronologically, it appears that Mrs. England left Lebanon and went to Oregon in 1961. Several letters which the defendant offered in evidence indicate that Mr. Fincher inquired when she would return, and requested that she either pay some of her debt to him or "send me the key or send it to anyone you would risk with it. * * *" The last of these letters is dated January 24, 1962. Apparently Mrs. England made no response, for in July 1962 this action was begun.

Plaintiff's petition is somewhat unusual in that he bases his right to possession upon the covenants and conditions of the contract of sale, but it is legally unexceptionable. In her answer, defendant admitted execution of the contract, but pleaded further that "* * * assuming the parties intended to be bound by [the contract], which plaintiff [sic] denies, the parties subsequently modified [the contract] by oral agreement in the following respects: That during the summer of 1960, the exact date being unknown by defendant, plaintiffs and defendant agreed that defendant could live in the house * * * as long as she wanted to do so and that defendant would never have to pay to the plaintiffs any monies and that plaintiffs would execute their general warranty deed to said premises to the defendant as soon as plaintiff Amos Fincher could secure plaintiff Nettie Fincher's signature on such a deed; and that in reliance upon said modified agreement and as partial consideration therefor, this defendant expended monies and labor on said premises and has continued to improve said premises."

No further action was taken in the case until February 5, 1968, when it was "transferred to the inactive docket" pursuant to local rule. In November 1968, by agreement, it was restored to the docket for trial on February 3, 1969. In February 1969 Mrs. Fincher's death was suggested, and in April 1969 the case was again transferred to the inactive docket. It was again set for trial in May 1969. In De-

cember 1969, defendant moved to "amend the prayer of her answer," so as to seek specific performance of the oral contract she had set up defensively in her answer. Plaintiff filed a reply, and moved to strike the allegation of oral modification of the contract from the answer. On December 10, 1969, the case was called, the motion to strike was taken with the case, and on December 17 the matter was finally heard.

It would serve no useful purpose to abstract and repeat all the trial proceedings. Counsel for defendant, in an opening statement, outlined the proof he expected to present. In support of her pleaded defense, and the counterclaim she had asked leave to file, defendant offered to prove, essentially: (1) a long course of dealing between plaintiff Amos Fincher and Mrs. England prior to the execution of the contract of sale; this was offered to show that Mr. Fincher had on several occasions loaned or given Mrs. England money without any expectation of repayment; (2) that the contract of sale was in fact a sham to conceal the nature of Mr. Fincher's relationship with defendant from his wife; (3) that in July 1960 Mr. Fincher had told Mrs. England she would never have to pay anything on the contract, and that as soon as he could persuade Mrs. Fincher to do so he would release Mrs. England and deed the property to her; and (4) that, relying on this promise, defendant had spent approximately $12,000 on the property. In order to "make his position clear," counsel for plaintiff objected to the reception of any of this proof. Without elaborating at this point, we may say that at various times during the trial defendant made offers to prove the matters outlined in her opening statement, and these offers were, for the most part, refused by the trial court.

█ Plaintiff's proof was brief, but in our view it was sufficient to establish the elements of his case. He exhibited a warranty deed to the property involved and a copy of the contract of sale; he testified that no payment had ever been made under

the contract, despite repeated demands. He testified that the reasonable rental value of the property was $75 per month. Mrs. England also testified; she stated that the reasonable rental value of the property was $50 per month, but she did not dispute the plaintiff's legal title nor claim that she had paid the balance due under the contract according to its terms. At the conclusion of the trial, the court entered a judgment restoring plaintiff to possession of the premises and awarding him the sum of $60 per month as rent from December 30, 1958, until he be restored to possession. Defendant filed no motion for new trial, but gave timely notice of appeal.

▇▇▇ Although the parties have not raised the question, we have had first to examine our jurisdiction of the appeal. Mo.Const. art. V, § 3, V.A.M.S., provides of course that our Supreme Court has exclusive jurisdiction in all cases involving the title to real estate, and if that court has jurisdiction of this appeal, we can take no action beyond transferring the case there. Mo.Const. art. V, § 13; Winslow v. Sauerwein, 365 Mo. 269, 274, 282 S.W.2d 14, 17 [4]; Starr v. Mitchell, Mo.App., 231 S.W.2d 299, 301 [3, 4]. The fundamental inquiry in determining whether or not an appeal involves the title to real estate is whether the judgment sought or rendered directly affects or operates upon the title. Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 952, 2 S.W.2d 771, 774; Domyan v. Dornin, Mo.App., 348 S.W.2d 360, 361 [1]. Ordinarily, the judgment rendered for a successful plaintiff in ejectment does not involve title in the appellate jurisdictional sense, Ballenger v. Windes, 338 Mo. 1039, 1042–1043, 93 S.W.2d 882, 884; Domyan v. Dornin, supra, 348 S.W.2d at 361 [2] but the assertion of equitable defenses or counterclaims may convert the action into an action to determine or quiet title, Auldridge v. Spraggin, 349 Mo. 858, 863, 163 S.W.2d 1042, 1044 [2], so where relief has been denied the appellant, we must look to the pleadings to determine what judgment was sought. Nettleton Bank v. McGauhey's Estate, supra, 318 Mo. at 954,

2 S.W.2d at 775 [10, 11]; Farris v. Hendrichs, Mo.App., 410 S.W.2d 97, 99 [4]. In this case, the trial court rendered a judgment putting the plaintiff in possession, but it did not render judgment on the counterclaim, as it did in Domyan v. Dornin, supra. Since the judgment putting the plaintiff in possession did not involve the title to real estate in a constitutional sense, and the counterclaim was stricken out, we conclude that we have jurisdiction of the appeal.

▇▇▇ The defendant's first point is, indeed, that the trial court erred in striking out her defensive allegations setting up an oral modification of the written contract upon which the plaintiff based his right to possession, and that the trial court erred in refusing to allow the defendant to interpose the same matter as a counterclaim. Were the point properly before us, we think we would have to rule the point against the defendant. As noted, the defendant first pleaded the oral modification as a purely defensive matter; much later, she asked leave to amend her answer to seek specific performance of the contract as modified. Plaintiff countered by moving to strike the allegations concerning the oral modification of the contract. With deference to defendant's counsel, it must be said that the pleader's intent is not clear on the face of the answer; it is not readily apparent whether the defendant intended simply to contradict the terms of the writing, to show the modification as a subsequent agreement not to sue, or to set up a species of promissory estoppel by the acceptance of defective performance, as discussed, for example, in Edwards v. Smith, Mo., 322 S.W.2d 770, 776 [4, 5]. In short, the sufficiency of the pleaded defense as against a motion to strike posed questions of law and fact which could not fairly be determined from the face of the pleadings. The trial court therefore quite properly deferred action on the motion until the defendant developed her evidence or made an offer of proof. See Augustus v. Board of Public Instruction, 5 Cir., 306 F.2d 862, 868–869 [3–6]; A.B.T. Sightseeing

Tours, Inc. v. Gray Line New York Tours, Corp., D.C.N.Y., 242 F.Supp. 365, 369 [5]; 2A Moore's Federal Practice, ¶ 12.21 [2], p. 2434 (2d ed.1968). The defendant made extensive offers of proof, but they were so general and diffuse as to amount to an offer to show all the factual background of the case, regardless of the admissibility of the proferred evidence or its relevance to the issues on trial. Under our procedure, the court was not required to sort out the admissible parts of the offer from those which were inadmissible, and it was justified in rejecting the whole offer of proof, as it did. Lott v. Kjar, Mo., 378 S.W.2d 480, 484; Bakelite Company v. Miller, Mo., 372 S.W.2d 867, 875–876 [14]; Eller v. Crowell, Mo., 238 S.W.2d 310, 313 [3].

■ We need not pursue the matter at length, for none of the specific points made by the defendant are before us for review. This is a court-tried case, and the defendant filed no after-trial motion. She does not in any manner question the sufficiency of the evidence; rather, she complains of error in granting and refusing certain motions, and in limiting her cross-examination of the plaintiff. These are specific claims of error, and as such must be preserved for review in an appropriate and timely after-trial motion, even in a court-tried case. Rule 79.03, V.A.M.R.; Glassburner v. Burtrum, Mo., 418 S.W.2d 119, 121 [3]; Adams v. Richardson, Mo., 337 S.W.2d 911, 915 [1]; Mueller v. Mueller, Mo., 318 S.W.2d 365, 370 [9]; In re J.L.L., Mo.App., 402 S.W.2d 629, 635. See also Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 1239, 124 S.W.2d 1164, 1166 [3]; Berry v. Rood, 209 Mo. 662, 673, 108 S.W. 22, 25.

For the reasons indicated, the judgment is in all respects affirmed.

TITUS, P. J., and STONE, J., concur.